

**FILED**

Jul 08 2016, 8:24 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Paula J. Beller
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Brad L. Sullivan,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

July 8, 2016

Court of Appeals Case No.
16A01-1512-CR-2175

Appeal from the Decatur Superior
Court

The Honorable Matthew D.
Bailey, Judge

Trial Court Cause No.
16D01-1408-F6-568

**Brown, Judge.**

[1] Brad L. Sullivan appeals the revocation of his community corrections placement. Sullivan raises one issue which we revise and restate as whether the trial court abused its discretion in revoking his placement in community corrections. We reverse and remand.

*Facts and Procedural History*

[2] On September 14, 2015, Sullivan and the State executed a plea agreement which provided that Sullivan would plead guilty to intimidation as a level 6 felony, criminal trespass as a class A misdemeanor, and battery as a class A misdemeanor in this cause, and battery as a class A misdemeanor in another cause. The plea agreement further provided that Sullivan would be sentenced in this cause to twenty-four months for intimidation, to one year each for criminal trespass and for battery, and that the sentences would run concurrently. It provided he would be sentenced for battery in the other cause to ninety-two days, and that credit time would be applied to this sentence resulting in it being served in full. The plea agreement further stated:

> 18 months shall be served as an initial executed sentence on electronically monitored home detention, so long as the defendant establishes and maintains eligibility through Community Corrections, including abiding by all rules of home detention and remaining current on fees. . . . If the defendant fails to establish eligibility the sentence will be served in the Decatur County Jail.

> * * * * *

> The defendant has been advised that the Court has discretion to determine the sanction if the defendant has been found to have

violated the rules and guidelines of Community Corrections. The defendant hereby waives this right and agrees that if found to have violated these rules or otherwise become ineligible (except for non-payment of fees due to a change in economic circumstances) then the remaining portion of the defendant's executed sentence shall be served at the Decatur County Jail.

Appellant's Appendix at 46.

[3] At a guilty plea hearing on September 14, 2015, Sullivan pled guilty pursuant to the plea agreement, and the court imposed an aggregate sentence of two years with eighteen months to be served on home detention and the balance to be served on supervised probation. In its judgment of conviction, the court stated: "If the defendant has not been approved for home detention by October 20, 2015, then the defendant shall report to the Decatur County Jail on that date to serve the sentence as an executed sentence in the Indiana Department of Correction." *Id.* at 43.

[4] On October 23, 2015, Decatur County Community Corrections filed a petition to revoke community corrections placement alleging Sullivan violated the conditions of his placement by not reporting to start home detention as described in an attached affidavit and incident report.

[5] On October 29, 2015, the court held an initial hearing on the petition at which Sullivan stated that he had paperwork that proves he was in the Columbus Regional Mental Health Unit and from there went to St. Vincent's Stress Center and that he was institutionalized and could not report. Sullivan further stated that he "got a hold of [his counsel], and [his] social worker at Columbus

Regional Mental Health Unit was supposed to contact [his counsel] and fax him the paperwork for that." Transcript at 23. He stated that he "was told that [he] had [$270] up front to start [his] house arrest," that he "had the house phone and the house check, everything approved," that "[e]verything's been done, but [he] had to have the two hundred and seventy (270) up front," that he "was under the assumption that that was out of [his] bond money and stuff," that "that's the only reason [he] had kind of a nervous break about it," that he had "proof that states that [he] was not able to contact him" and that he "was in a[n] institution." *Id.* at 23-24. He also stated that "[i]t seems like every time I start to get on the right medications and on the right path, I'm throwed (sic) back in here, and then I'm taken off the medications and have to restart everything all over again, and given my conditions, it's [] pretty serious." *Id.* at 24. The court informed Sullivan that, if he was found to be in violation, the court could continue his placement or could order all or a part of his previously suspended sentence to be served in the Indiana Department of Correction (the "DOC"). The court entered a denial of the allegations on behalf of Sullivan and scheduled a revocation hearing.

[6] On November 12, 2015, the court held the revocation hearing, at which the State presented the testimony of the Director for Decatur County Community Corrections who stated that, "after Court, [Sullivan] did come in, and we gave him a Court date of October twentieth (20th) to start his[] home detention," that there was no additional contact with Sullivan prior to October 20th, and that Sullivan did not begin home detention on or before October 20th. *Id.* at 30.

On cross-examination, the Director indicated that Sullivan had already been approved for community corrections, that if Sullivan were to report he "would be able to be hooked up," and that he would have no problem accepting Sullivan to the program if the court ordered. *Id.* at 31.

Sullivan testified and acknowledged his report date of October 20th and stated that he was in a mental health facility at the time for "post traumatic distress disorder and major depressive disorder." *Id.* at 33. He indicated that he would report immediately if the court were to allow it and that he would have no problem financially because he still had bond to pay for that and he had a job waiting for him when he was released. On cross-examination, Sullivan indicated he went to Columbus Regional on the 15th and was released from there on the 17th, and from there he went directly to St. Vincent's through Medicab. When asked if he was allowed to use a telephone at either of the facilities, Sullivan replied that "I was at Columbus through one of my counselors, and I contacted my legal representative, . . . , and I was under the impression that he was gonna contact the Court and Community Corrections," and when asked if he contacted community corrections, he answered "I was unable to." *Id.* at 34. He testified he was released from St. Vincent's on October 21st and that he was under the impression that his counsel "had taken care of everything, then by the time I was able to contact him again, he had moved to South Carolina, I believe it was." *Id.* at 35. When asked why he was unable to contact community corrections, Sullivan testified that he was under the impression it was taken care of by his counsel because his counsel "said he

would fax the uh, Community Corrections and fax the Court." *Id.* On redirect, Sullivan indicated that it was just a misunderstanding that he did not know his new report date. Sullivan's counsel informed the court that he had contacted Sullivan's previous legal counsel, who told him that "he thought he had faxed over medical documentation to the Prosecutor's Office," that "that's where he told me to try to get the records he had um, and doesn't appear that it came through," and "that was my understanding as well, that that had been done, but I have not been able to obtain his medical records." *Id.* at 36.

[8] The court then addressed the deputy prosecutor and stated, "as I look through this plea agreement, this looks like one of those where, if they violate the plea agreement, specifies they do the whole thing," and the deputy prosecutor said that the "State's position is he violated, and he does the remainder of the sentence at the jail." *Id.* at 37. The deputy prosecutor also stated "[z]ero tolerance probation is just quite common, and it's always been upheld," and the court replied: "Really? Hmm." *Id.* The court found Sullivan in violation of the conditions of his community corrections placement on home detention by not beginning his placement as ordered, revoked his placement, and ordered that he serve his time at the Indiana Department of Correction. The court's written order states: "As required by the terms of the Plea Agreement filed and accepted on September 14, 2015, the Court now orders that [Sullivan's] entire 18 month community corrections sentence be revoked, and [Sullivan] shall serve the 18 months as an executed sentence at the Indiana Department of Correction." Appellant's Appendix at 63.

## *Discussion*

[9]     The issue is whether the trial court abused its discretion in revoking Sullivan's placement in community corrections. Placement in community corrections is at the sole discretion of the trial court. *Treece v. State*, 10 N.E.3d 52, 56 (Ind. Ct. App. 2014) (citation omitted), *trans. denied*. For purposes of appellate review, we treat a hearing on a petition to revoke a placement in a community corrections program the same as we do a hearing on a petition to revoke probation. *Holmes v. State*, 923 N.E.2d 479, 482 (Ind. Ct. App. 2010) (citation omitted). Probation revocation is a two-step process. *Ripps v. State*, 968 N.E.2d 323, 326 (Ind. Ct. App. 2012). First, the trial court must make a factual determination that a violation of a condition of probation actually occurred. *Id.* Then, if a violation is proven, the trial court must determine if the violation warrants revocation of the probation. *Id.* (citing *Woods v. State*, 892 N.E.2d 637, 640 (Ind. 2008)). "However, even a probationer who admits the allegations against him must still be given an opportunity to offer mitigating evidence suggesting that the violation does not warrant revocation." *Id.* (citing *Woods*, 892 N.E.2d at 640).

[10]    Sullivan asserts that the predetermined sanction in his plea agreement that he serve his entire sentence in jail for any rule violation was improper as a matter of law and deprived him of a number of his constitutional rights including his right to due process. He further argues that the court abused its discretion in enforcing the provision, that he did not purposefully violate community corrections' rules, that circumstances beyond his control created the situation

which led to the minor rule violation, and that the State presented no compelling facts to justify implementation of such a harsh sentence. He also argues that he had taken steps to be hooked up on home detention, that he was in a mental health hospital on the day he was to report, that he and his social worker contacted his trial attorney, that his trial attorney believed he had faxed commitment information to the prosecutor's office, and that community corrections was still willing to accept Sullivan into the program.

[11] The State responds that Sullivan did not substantiate his testimony with any medical records and failed to explain why he did not follow up with community corrections or his attorney for six days after he returned home. It further argues that, because Sullivan was approved for community corrections, he had the information necessary to contact community corrections himself, and that, in light of the facts he did not speak directly with his attorney while hospitalized, did not have confirmation that his attorney had taken care of everything, and did not contact community corrections during or after his hospitalization, it was not unreasonable for the court to determine that Sullivan had violated a condition of his community corrections placement. In his reply brief, Sullivan maintains that in essence the State's argument is that, no matter what agreement he entered, the court must uphold it, and he contends that this case is a good example of the unfairness that can result in such a scenario, namely, that he must go to jail even though he had good reason for not surrendering himself to begin his home detention.

[12] We note that Sullivan does not dispute that he did not report as required on October 20, 2015. Rather, he maintains the court abused its discretion in imposing such a harsh sentence under the circumstances including among other factors that he was in a mental health hospital on the day he was to report. In *Woods*, Woods was placed on probation that the parties referred to as "strict compliance," which the deputy prosecutor explained as meaning "[a]ny other violation of any terms or conditions of his probation will result in full backup of 15 years." *Woods*, 892 N.E.2d at 639. The State alleged Woods failed to report for urinalysis drug testing, failed to report to the probation department, and failed to make a good-faith effort to pay fees, and the trial court revoked his probation. *Id.* The Indiana Supreme Court held:

> In one sense all probation requires "strict compliance." That is to say probation is a matter of grace. And once the trial court extends this grace and sets its terms and conditions, the probationer is expected to comply with them strictly. If the probationer fails to do so, then a violation has occurred. But even in the face of a probation violation the trial court may nonetheless exercise its discretion in deciding whether to revoke probation.
>
> In any event the very notion that violation of a probationary term will result in revocation no matter the reason is constitutionally suspect. For example, failure to pay a probation user fee where the probationer has no ability to pay certainly cannot result in a probation revocation. And what of a probationer not reporting to his probation officer because he was in a coma in a hospital? Or consider a failed urinalysis test because of prescription medication a probationer is taking on orders from his treating physician. Although not a defense to revocation, lack of volition

is often a factor pertinent to a disposition in a revocation proceeding.

We acknowledge that telling a defendant that he is on "strict compliance" is a dramatic way of putting him on notice that he is on a short leash and has been given one final chance to "get his act together." Nonetheless due process requires that a defendant be given the opportunity to explain why even this final chance is deserving of further consideration.

*Id.* at 641 (citations omitted).

[13] Sullivan testified as to the reasons he believed his violation did not warrant revocation of his placement. At the October 29, 2015 hearing, Sullivan stated that he was in the Columbus Regional Mental Health Unit, later went to St. Vincent's Stress Center, and at the time could not report. He further stated that he "got a hold of" his counsel, and his social worker at Columbus Regional was supposed to contact his counsel and fax him paperwork, and that he had his house and house phone approved for home detention. Transcript at 23. At the November 12, 2015 hearing, Sullivan testified that he went to Columbus Regional on October 15, 2015, and directly to St. Vincent's through Medicab on October 17, 2015, and that he was in a mental health facility on the date he was to report to community corrections. Sullivan again testified that he had contacted his legal representative and was under the impression that he would contact the court and community corrections, and he testified, when asked if he contacted community corrections, that he "was unable to." *Id.* at 34. Additionally, Sullivan's counsel informed the court that Sullivan's previous

legal counsel had informed him that "he thought he had faxed over medical documentation to the Prosecutor's Office." *Id.* at 36.

[14] The provision of Sullivan's plea agreement which essentially provided that any non-fee violation would automatically result in the revocation of his community corrections placement is constitutionally suspect. *See Woods*, 892 N.E.2d at 641 (observing that "the very notion that violation of a probationary term will result in revocation no matter the reason is constitutionally suspect"). While Sullivan admitted to not reporting to community corrections on October 20, 2015, he "must still be given an opportunity to offer mitigating evidence suggesting that the violation does not warrant revocation," *Ripps*, 968 N.E.2d at 326 (citing *Woods*, 892 N.E.2d at 640), and he offered evidence that his house and phone were approved for home detention, that he was hospitalized at the time he was to report, and that he was under the impression his counsel would contact the court and community corrections. The deputy prosecutor argued for "[z]ero tolerance probation" and the trial court's written order reflects the court's belief that it was required to revoke Sullivan's placement by the terms of the plea agreement. *Id.* at 37.

[15] Based on the totality of the circumstances, including the nature of the violation and sanction, we conclude the trial court abused its discretion in finding that Sullivan's violation warranted revoking his community corrections placement and in ordering him to serve eighteen months in the DOC. *See Ripps*, 968 N.E.2d at 325-326 (observing that Ripps violated a condition of his probation by failing to inform people living at his place of residence of his sex offender

status, discussing *Woods* and the Court's disapproval of "strict compliance" probation where any violation will automatically result in revocation, noting that Ripps suffered from health issues, was attempting to adhere to his probation conditions and taking steps to correct the violation, and was in violation by living about twenty feet too close to a public library and some ambiguity existed in how the distance was measured, and holding that given the circumstances it was unreasonable for the trial court to determine Ripps's violation warranted revoking his probation).

## *Conclusion*

For the foregoing reasons, we reverse the order of the trial court revoking Sullivan's placement in community corrections and remand for placement in community corrections.

Reversed and remanded.

Baker, J., and May, J., concur.