**Brian WOODS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A04–0612–CR–748.**

Court of Appeals of Indiana.

Nov. 27, 2007.

Robert D. King, Jr., Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

MATHIAS, Judge.

Brian Woods ("Woods") was placed on probation in 2002. This case arises from the decision of the Marion Superior Court to revoke Woods's probation. Woods claims upon appeal that the trial court denied him due process by preventing him from explaining why he violated the terms of his probation.

We affirm.

**Facts and Procedural History**

On October 23, 2002, Woods pleaded guilty to conspiracy to commit dealing in cocaine and dealing in marijuana. The trial court sentenced Woods to twenty years incarceration with five years executed, fifteen years suspended, and two years on formal probation.

On December 28, 2005, the State filed a notice of probation violation alleging that Woods had not paid court-ordered fees, that Woods had tested positive for cocaine, and that Woods had failed to report for a drug test as ordered. At a hearing held on January 19, 2006, the parties informed the trial court that they had reached an agreement whereby Woods admitted to the violations and in exchange, his probation would be extended by one year, he would enter drug treatment, and he would be tested weekly for drug use. Further-

more, Woods was to be placed on "strict compliance," meaning that "[an]other violation of any terms or conditions of his probation will result in full backup of 15 years." Tr. p. 4. The trial court explained to Woods that "strict compliance" meant that Woods would "go to jail if you don't do what you're supposed to do i[n] the slightest, that's 15 years in your case[.]" Tr. p. 4. Woods indicated that he understood. The trial court entered an order reflecting the terms discussed at the hearing.

On October 30, 2006, the State filed another notice of probation violation, this time alleging that Woods had failed to report for urinalysis tests on three separate occasions, that Woods had failed to report to the probation department as ordered, and that Woods had failed to make a good-faith effort to pay his court-ordered fees. The trial court held a hearing on November 30, 2006. The State proposed a deal whereby Woods would admit to the violations and in exchange serve twelve years executed instead of the fifteen years remaining on Woods's sentence. The CCS indicates that Woods "admit[ted] violation." Appellant's App. p. 19. The transcript reveals that Woods at least tacitly admitted to the violation by asking if he could explain why he had failed to report. The trial court replied, "No[,] because it doesn't matter, because you're on strict compliance[.] [Y]ou weren't allowed to miss[,] remember?" Tr. p. 9. The trial court then proceeded to revoke Woods's probation and order him to serve twelve years executed, per the State's offer. Woods now appeals.

## Discussion and Decision

Woods argues that the trial court denied him due process when it denied him the opportunity to explain why he violated the terms of his probation. *See Black v. Romano,* 471 U.S. 606, 612, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985) (holding that a probationer is generally entitled to an opportunity to show that there was a justifiable excuse for any violation or that revocation is not the appropriate disposition). The State responds by arguing that no such opportunity was required because Woods was on strict compliance probation.

Woods's constitutional arguments aside, we observe that Woods's placement on strict compliance probation was a result of an agreement between him and the State, which was approved by the trial court. In this sense, his agreement to be placed on strict compliance probation is akin to a plea agreement. Criminal defendants who plead guilty to achieve a favorable outcome in the process of bargaining give up numerous substantive claims and procedural rights. *Games v. State,* 743 N.E.2d 1132, 1135 (Ind.2001). The rights and claims given up include both statutory and constitutional rights. *See id.* (holding that defendant waived right to challenge his conviction on double jeopardy grounds); *Williams v. State,* 836 N.E.2d 441, 443–44 (Ind.Ct.App.2005) (holding that defendant waived Sixth Amendment right to have aggravating factors proved beyond a reasonable doubt to a jury); *Schippers v. State,* 622 N.E.2d 993, 995 (Ind.Ct.App. 1993) (holding that defendant waived statutory right to seek modification of sentence). We therefore perceive no constitutional impediment to concluding that Woods, by agreeing to be placed on strict compliance probation in exchange for not having his probation revoked at the first revocation hearing, gave up any right he had to explain his violation or argue that revocation was inappropriate. To do otherwise would allow probationers to enter into favorable agreements in lieu of full revocation but not be held to their end of the bargain.

Moreover, we note that even if we were to consider Woods's constitutional claim upon the merits, he would not prevail. Although the *Black* Court held that a probationer is entitled to an opportunity to show that there was a justifiable excuse for any violation or that revocation is not the appropriate disposition, the Court explained that a probationer must be given such an opportunity only where the factfinder has the discretion to continue probation. 471 U.S. at 612–13, 105 S.Ct. 2254. Although Indiana trial courts generally have discretion to continue probation, *see* Ind.Code § 35–38–2–3(g) (2004 & Supp. 2007), Woods had already violated the terms of his probation and agreed to be on strict compliance probation. Under the terms of this strict compliance probation, violation of any condition of probation would automatically result in the revocation of his probation. In this sense, Woods's situation is akin to one in which a fact-finder has no discretion to continue probation.[1] We therefore cannot fault the trial court for not permitting Woods to explain why he violated the terms of his strict compliance probation. *See United States v. Cornog,* 945 F.2d 1504, 1512 (11th Cir.1991) (noting that a final hearing is unnecessary where the parole authority is required to revoke parole upon finding that the parolee had violated one of the conditions of parole); *Pickens v. Butler,* 814 F.2d 237, 239 (5th Cir.1987) (concluding that no final revocation hearing was required where parole board was required by state law to revoke defendant's parole following his felony conviction and had no discretion to continue parole).

Lastly, we note that this is not a situation where a probationer on strict compliance had his probation revoked for a trivial violation. Woods had already been found to be in violation of the terms of his probation, and despite having been given a second chance with strict compliance probation, he nevertheless failed to report for urinalysis on three separate occasions and failed to report to the probation department. Even if Woods had not agreed to strict compliance probation, these violations would have supported a decision to revoke his probation. Under the facts and circumstances before us, the trial court's decision to deny Woods the opportunity to explain his violations was, at most, harmless error.

Affirmed.

NAJAM, J., and BRADFORD, J., concur.

---

1. As indicated in *Black,* there is no due process requirement that a fact-finder be given discretion to continue probation or parole. 471 U.S. at 612, 105 S.Ct. 2254.