
FILED
Mar 13 2017, 8:57 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ethan G. Bartanen
Salem, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Derrian Hampton,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | March 13, 2017<br><br>Court of Appeals Case No.<br>88A04-1608-CR-1862<br><br>Appeal from the<br>Washington Superior Court<br><br>The Honorable<br>Frank Newkirk, Jr., Judge<br><br>Trial Court Cause No.<br>88D01-1310-FB-700 |

**Kirsch, Judge.**

[1] After the State filed a petition for revocation of Derrian Hampton's ("Hampton") suspended sentence, alleging probation violations, Hampton and the State entered into an Agreement on Petition to Revoke Suspended Sentence ("the Agreement"). In the agreement, Hampton admitted to a probation violation and was ordered to serve the balance of a previously-suspended

sentence, and the State agreed to stay execution of the sentence for approximately six months. At the end of such time a review hearing would be held and, if Hampton had completed all terms and conditions of probation, the petition for revocation of suspended sentence would be dismissed. The trial court accepted the Agreement and entered an order. Following the review hearing, the trial court issued an Order on Violation of Probation, ordering Hampton to serve the previously-suspended sentence. The trial court denied Hampton's Motion to Correct Error Alternatively Motion to Reconsider ("Motion to Reconsider"), and Hampton now appeals, raising three issues that we consolidate and restate as: Whether the trial court abused its discretion when it denied Hampton's Motion to Reconsider.

[2] We affirm in part, reverse in part, and remand.

## Facts and Procedural History

[3] In November 2013, Hampton pleaded guilty to Class C felony aiding burglary. *Appellant's App. Vol. IV* at 12. In June 2014, the trial court sentenced her to three years in the Indiana Department of Correction ("DOC"), with one year and 185 days suspended to probation. Hampton's terms of probation required her to, among other things: obtain prior consent from the Washington County probation department before moving from her present address; notify the Washington County probation department of any change in address within twenty-four hours of such change; report in person to the Washington County probation department no less than once per month; not violate laws of the State of Indiana; pay $2,476 in restitution and $192 each month toward fines, fees,

and costs; submit to drug/alcohol screens upon demand; and not consume alcohol or any drug which has not been prescribed by a physician. *Appellant's App. Vol. VI* at 24-25. Hampton's term of probation began on December 15, 2014.

[4] On August 6, 2015, the State filed a Petition for Revocation of Suspended Sentence ("Petition for Revocation"), alleging that Hampton had violated the terms of her probation as follows: (1) she moved her residence from that last reported to the probation department, and her current residence was "unknown"; (2) she made no payments toward fees, costs, or restitution; (3) as of August 4, 2015, she failed to call the drug screen line 59 times "to see if she was to report to the Probation Department for a drug screen"; and (4) she appeared at the probation department on July 22, 2015, for a scheduled drug screen and failed a urine screen, which tested positive for Spice.[1] *Id.* at 32-33. The State asked the trial court to enter an order revoking Hampton's suspended sentence.

[5] On November 23, 2015, the parties appeared for a hearing on the State's Petition for Revocation and tendered the Agreement to the trial court. In that Agreement, Hampton stipulated that she had violated the conditions of her probation by failing to call the drug screen line and that the sanction for this

---

[1] After the State filed its Petition for Revocation of Suspended Sentence, pauper counsel was appointed on September 30, 2015, to represent Hampton. She was represented by counsel at the time of the execution of the Agreement and at all times relevant to this appeal.

violation was for her to serve the previously-suspended 550 days in the DOC, less credit days. The commitment was stayed until a June 13, 2016 review hearing ("Review Hearing"). *Appellant's App. Vol. VII* at 8. The Agreement stated that, if at the time of the Review Hearing, Hampton had completed all terms and had paid all monetary obligations, the sentence would be withdrawn and, if the probation term had not elapsed, Hampton would remain on probation, subject to all original terms. If, on the other hand, Hampton had not completed all terms and obligations by the time of the Review Hearing, the sentence "shall be executed immediately . . . [and] Probation will be closed as unsuccessful." *Id*. It was Hampton's burden at that Review Hearing to show that all terms and conditions of probation had been met. *Id*. In the Agreement, the State also agreed to reduce Hampton's monthly payment toward restitution and fees to "at least $100/month[,]" and the State agreed to an extension of those payments "until paid in full." *Id*. The parties further agreed that "The Court has no authority to alter this [A]greement without the consent of the State and defendant." *Id*.

[6] At the hearing, the trial court asked Hampton a series of questions inquiring about whether she knew and understood the terms of the Agreement. She testified that she had not called the drug screen line as required and acknowledged that, pursuant to the terms of the Agreement, if she failed to complete terms and conditions of probation, her probation and suspended sentence would be revoked and "I go straight, a year and a half in prison." *Tr.* at 2. The trial court asked Hampton whether she understood that if she decided

to sign the Agreement, she would not have a hearing or testimony or evidence concerning her violation of probation. She responded that she understood that consequence. *Id*. at 4. The trial court advised Hampton that the trial court would not have the authority to later change or alter the terms of the Agreement, such that she could not later assert "I shouldn't have said that. I don't want to do that now, I want to change it." *Id*. The court asked Hampton if she understood, to which she replied, "Yes sir." *Id*. The trial court reaffirmed that if it accepted the Agreement, there would be no formal hearing, no evidence, and no witnesses to hear or cross-examine; Hampton testified to her understanding that, by signing the Agreement, she was giving up such rights. Hampton testified that she was entering into the Agreement freely and voluntarily and that she was satisfied with her lawyer's representation. The trial court asked Hampton whether it was true that, as stated in the Agreement, she failed to call the drug screen line, and she responded, "Yes." *Id*. at 5. The trial court asked Hampton whether she had the ability to call the drug screen line, and she replied, "Yes." *Id*. The trial court approved the Agreement and entered an order thereon. *Appellant's App*. *Vol. II* at 9 (CCS entry reflecting entry of order in Record of Judgments and Orders).

[7]     On June 13, 2016, the parties appeared for the Review Hearing. At the hearing, the State stipulated that the parties had agreed, on February 11, 2016, to lower the monthly payment arrangement from $100 per month to $50 per month. Hampton's testimony at the Review Hearing included that she had called the drug screen line, most, but not all, days. She testified that she knew where to

call and knew that she was required to call by 3:00 p.m., but on some occasions did not call by 3:00 p.m. because she "sometimes forgot." *Tr.* at 16. With regard to her required payments toward costs, fees, and restitution, the evidence was that she owed $100 per month for December 2015 and January 2016, and she owed $50 per month for February through May. The evidence presented was that Hampton made no payment in December 2015, paid $40 in January 2016, $140 in February 2016, nothing in March and April, and $25 in May, such that she had paid $205 of the required $400 that was owed for the months of December 2015 through May 2016.[2] Hampton agreed with the payment history. *Id.* at 24. That same day, the trial court issued an Order on Violation of Probation, determining that the evidence was that Hampton did not comply with the Agreement, as she did not call in by 3:00 p.m. on all dates, and she failed to make the payments that were required under her probation conditions. Noting that it lacked the authority to change the Agreement, the trial court ordered Hampton to serve 550 days in the DOC, less credit time.

[8] The next day, Hampton filed her Motion to Reconsider. The trial court held a hearing on Hampton's motion, at which counsel appeared and presented argument. Hampton's counsel argued that: (1) Hampton had substantially

---

[2] The original probation terms, entered in June 2014, state that Hampton owed $192 per month toward fines, fees, and costs. *Appellant's App. Vol. VI* at 24. As of August 2015, Hampton was alleged to have made no payments toward fees and costs, nor toward restitution. *Id.* at 32. In November 2015, the parties executed the Agreement, reducing the required monthly payment amount toward restitution and fees to "not less than $100 per month," and Hampton was to make her first payment in December 2015. *Id. Vol. VII* at 8. It is not clear whether Hampton paid any amount in the month of November 2015.

complied with the Agreement, as she called the drug screen line on most days, and on the days that she missed the 3:00 p.m. deadline, she called the front desk of the probation department; (2) Hampton did not receive notice that she was not in compliance with her calls to the drug screen line; and (3) notice would have allowed counsel to obtain Hampton's phone records and records from the probation department, before the Review Hearing. Counsel also argued that Hampton was denied due process because the Agreement took away the trial court's discretion as to what sentence to impose for the violation, and it improperly shifted the burden to her. The State argued in response that: (1) the Agreement – in which Hampton admitted to violating her probation and was ordered to serve a 550-day previously-suspended sentence, which the State agreed to stay if she complied with probation – was validly reached and executed; (2) Hampton and her counsel knew that if Hampton did not comply with all conditions of probation by the June 2016 Review Hearing that she would be ordered to serve the 550-day sentence; and (3) Hampton and her counsel could have contacted probation or the prosecutor's office prior to the Review Hearing to ascertain Hampton's compliance. The State also argued that Hampton received all required due process. After taking the matter under advisement, the trial court issued an Order Concerning Defendant's Motion to

Correct Error Alternatively Motion to Reconsider, denying Hampton's motion.[3]  Hampton now appeals.

## Discussion and Decision

[9]  On appeal, Hampton argues that the trial court abused its discretion when it approved the Agreement because it improperly shifted the burden to her to show future compliance with her probationary terms and conditions, and it improperly removed judicial discretion from the trial court with regard to what sentence to impose for a violation of probation.  The State argues, and we agree, that a direct challenge to the trial court's approval of the Agreement, which occurred in November 2015, is untimely.  *See Appellee's Br.* at 11 *(*citing *State v. Hunter*, 904 N.E.2d 371, 373 (Ind. Ct. App. 2009)).

[10]  As stated, the parties presented the Agreement to the trial court on November 23, 2015.  That same day, the trial court, in its discretion, approved and accepted the Agreement and entered an order thereon.  *Appellant's App. Vol. II* at 9 (CCS entry reflecting entry of order in Record of Judgments and Orders).  Thus, at that time, the Agreement became an order of the court, which imposed a sanction (550 days of incarceration unless Hampton showed in six months that she complied with all terms and conditions of probation) for Hampton's admission that she violated probation.  As Hampton concedes, "The

---

[3] We note that, in its Order Concerning Defendant's Motion to Correct Error Alternatively Motion to Reconsider, the trial court granted Hampton's request to stay enforcement of the November 23, 2015 and June 16, 2016 orders, pending resolution of this appeal.

Agreement [] is a final order as it determined that [Hampton] had violated the terms of her probation and set a sentence." *Appellant's Br*. at 8; *see also* Ind. Code § 35-38-2-3(l) (judgment revoking probation is final appealable order). Hampton, however, did not file a notice of appeal or a motion to correct error within thirty days. *See* Ind. Appellate Rule 9(A)(1). The failure to timely file a notice of appeal forfeits the right to appeal except as provided by Indiana Post-Conviction Rule 2.[4] App. R. 9(A)(5). Thus, by her failure to comply with the applicable time limits, Hampton has forfeited her right to a direct appeal of the trial court's order that approved the Agreement.[5]

[11] That said, in this case, the trial court's subsequent actions are reviewable. Here, after Hampton admitted at the Review Hearing in June 2016 that she failed to make all calls to the drug screen line as required and failed to make the required payments toward fees and restitution, the trial court determined that she had not complied with the terms and conditions of probation, and it issued, on June

---

[4] In pertinent part, Post-Conviction Rule 2 provides: "An 'eligible defendant' for purposes of this Rule is a defendant who, but for the defendant's failure to do so timely, would have the right to challenge on direct appeal a conviction or sentence after a trial or plea of guilty by filing a notice of appeal, filing a motion to correct error, or pursuing an appeal." *See also Dawson v. State*, 943 N.E.2d 1281, 1281-82 (Ind. 2011) (dismissing defendant's belated appeal and finding that Post-Conviction Rule 2 is available for direct appeals of convictions and sentences but not for belated appeals from an order revoking probation).

[5] We recognize that our Supreme Court has determined, "Forfeiture and jurisdiction are not the same." *In re Adoption of O.R.,* 16 N.E.3d 965, 970 (Ind. 2014). Indiana Appellate Rule 9(A)(5) provides that, by failing to file timely a Notice of Appeal, "the right to appeal shall be forfeited." However, our Supreme Court has explained that "although a party forfeits its right to appeal based on an untimely filing of the Notice of Appeal, this untimely filing is not a jurisdictional defect depriving the appellate courts of authority to entertain the appeal." *Id*. at 971. The question is whether there are extraordinarily compelling reasons why this forfeited right should be restored. *Id*. We do not find extraordinarily compelling reasons to be present in this case.

13, 2016, an Order on Violation of Probation, ordering her to serve the previously-suspended 550-day sentence. Hampton filed her Motion to Reconsider the next day. On July 20, 2016, the trial court issued its Order Concerning Defendant's Motion to Correct Error Alternatively Motion to Reconsider ("Order Denying Motion to Reconsider"), and Hampton filed her Notice of Appeal within thirty days. The propriety of the trial court's Order Denying Motion to Reconsider is, therefore, properly before us. *See Cooper v. State*, 917 N.E.2d 667, 673 (Ind. 2009) (observing that, where defendant failed to timely file motion to correct error or notice of appeal of trial court's revocation of his probation, but defendant later filed a motion to reconsider revocation order, only issue properly on appeal is whether trial court erred by denying defendant's motion to reconsider), *overruled on other grounds by Heaton v. State*, 984 N.E.2d 614 (Ind. 2013).[6] "'We will review a trial court's reconsideration of its prior rulings for abuse of discretion.'" *Id.* at 674 (quoting *Estate of Hammar v. Hammar,* 847 N.E.2d 960, 962 (Ind. 2006)).

## I. Order Denying Motion to Reconsider

[12] In its June 2016 Order on Violation of Probation, the trial court determined that the evidence at the Review Hearing established that Hampton failed to pay her monthly fees as required and failed to call the drug screen line each day by 3:00

---

[6] *Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013) held that trial court was required to use the preponderance of the evidence standard, not probable cause standard, in determining whether a defendant violated probation, overruling *Cooper v. State*, 917 N.E.2d 667 (Ind. 2009) and other prior cases.

p.m. as required. After recognizing that the "Parties entered into a binding agreement on 11/23/15[,]" the trial court determined: "The Court, having no authority to change the [A]greement, and finding that the defendant has not fully complied, orders the defendant to serve 550 days at [DOC][.]" *Appellant's App. Vol. VII* at 12. Hampton asked the trial court to reconsider its Order on Violation of Probation, seeking relief from the imposition of the 550-day sentence. At the hearing on the Motion to Reconsider, the trial court, addressing Hampton's counsel, stated:

> If you're arguing that I have the power to change the [A]greement, so that it no longer imposes this consequence on her, then tell me where I get that power, cause the [A]greement doesn't say that. It says that the court lacks the authority to alter the [A]greement.
>
>  . . . .
>
> Okay, well, she had failed to comply and I lack the authority to change the [A]greement, she's going to have to serve 550 days at [DOC]. Ma'am. I'm sorry.

*Tr.* at 24. While we appreciate the trial court's reasoning, we find that its ultimate outcome is not in accord with Indiana law.

[13] Probation revocation is a two-step process. First, the trial court makes a factual determination that a violation of a condition of probation actually occurred; second, if a violation is proven, the trial court must determine if the violation warrants a revocation of the probation. *Johnson v. State*, 62 N.E.3d 1224, 1229

(Ind. Ct. App. 2016); *Hardy v. State*, 975 N.E.2d 833, 835 (Ind. Ct. App. 2012). Upon revoking probation, the trial court may impose one of several sanctions provided by statute. *Hardy*, 975 N.E.2d at 835. Even a probationer who admits the allegations against him must still be given an opportunity to offer mitigating evidence suggesting that the violation does not warrant revocation. *Ripps v. State*, 968 N.E.2d 323, 326 (Ind. Ct. App. 2012).

[14] Here, the trial court approved the Agreement in November 2015. When it did so, the Agreement was no longer an agreement of the parties; it became a court order. As required by Indiana Trial Rule 77(B), the CCS reflects "ORDER entered" in the Record of Judgments and Orders. *Appellant's App. Vol. II* at 9. Trial courts retain continuing authority over their own orders during the probationary period. *See e.g.*, Ind. Code § 35-38-2-3(g) (trial court has authority to order executed sentence if defendant violates probation at any time during the probationary period) and Ind. Code § 35-38-2-1.8 (trial court may hold new probation hearing at any time during probationary period and may modify probationer's conditions of probation); *see also Cooper*, 917 N.E.2d at 674 (recognizing "the authority of a trial court to change its own rulings" and citing *Pond v. Pond*, 700 N.E.2d 1130, 1135 (Ind. 1998) ("A trial court may reconsider an order or ruling if the action remains *in fieri*, or pending resolution)).

[15] The trial court had continuing authority to consider Hampton's violations and her partial compliance, and it was required to determine the appropriate sanction to impose. This outcome is in accordance with our Supreme Court's direction in *Woods v. State*, 892 N.E.2d 637 (Ind. 2008), where the Court had

occasion to examine an agreement that was reached between a probationer and the State on the State's petition to revoke probation. As here, the agreement contained a provision that purported to remove a trial court's ability to exercise discretion to determine the appropriate sanction for a probation violation. Our Supreme Court found that that provision was "constitutionally suspect." *Id*. at 641.

[16] In *Woods*, the defendant pleaded guilty and received a sentence of which a portion, namely fifteen years, was suspended. Woods was released from the DOC and placed on probation, and the State later filed a notice of probation violation. As in the present case, the parties informed the trial court that they had reached an agreement. Under the agreement, Woods would admit to the several violations that the State had alleged, and, in exchange, his probation would be extended for one year, and he would be tested weekly for drug use. Woods was placed on "strict compliance," meaning any other violation of any terms or condition of probation would result "in full . . . 15 years." *Id*. at 639. The trial court asked Woods if he understood that he would go to jail for 15 years "if you won't do what you're supposed to do in the slightest," and Woods stated that he understood. *Id*. The trial court entered an order, and Woods's probation was extended until January 2007.

[17] In October 2006, the State filed a second notice of probation violation, alleging that he failed to report to drug testing, failed to report to probation department, and failed to make an effort to pay court-ordered fees. At the start of the probation revocation hearing, the parties informed the trial court about the

status, and the prosecutor responded that, if the trial court found that a violation had occurred, Woods faced 15 years, but that the State had offered Woods 12 years. At that point, Woods asked the trial court if he could explain "why [he] missed," and the trial court stated, "No, because it doesn't matter, because you're on strict compliance you weren't allowed to miss remember?" *Id*. Woods appealed, asserting that the trial court denied him due process by preventing him from explaining why he violated probation.

[18] On appeal, this court affirmed the trial court. *Woods v. State,* 877 N.E.2d 188, 189 (Ind. Ct. App. 2007), *trans. granted.* On transfer, our Supreme Court disapproved of the trial court's lack of discretion to determine what sanction to impose. In its analysis, the Court recognized that "[i]n one sense, all probation requires 'strict compliance'" because a probationer is expected to comply with terms and conditions of probation, and "[i]f the probationer fails to do so, a probation violation has occurred." 892 N.E.2d at 641. However, the Court continued,

> the very notion that violation of a probationary term *will result in revocation no matter the reason is constitutionally suspect.*
>
> . . . .
>
> [T]elling a defendant that he is on 'strict compliance' is a dramatic way of putting him on notice that he is on a short leash and has been given one final chance to 'get his act together.' Nonetheless *due process requires that a defendant be given the opportunity to explain why even this final chance is deserving of further consideration.*

*Id.* (internal citations omitted) (emphasis added). The *Woods* Court held that the trial court erred by denying Woods the opportunity to explain why his admitted violation should not result in revocation of his probation.[7] *Id.*

[19] More recently, a panel of this court in *Sullivan v. State*, 56 N.E.3d 1157 (Ind. Ct. App. 2016) addressed a similar situation where a plea agreement contained a provision that the prosecutor referred to as "zero tolerance probation." *Id.* at 1158. Among other things, Sullivan received concurrent sentences of twenty-four months, but the plea agreement directed that he would serve eighteen months on electronically-monitored home detention, so long as he maintained eligibility through community corrections, including abiding by all rules of home detention and remaining current on fees, and if he failed to establish eligibility, "the sentence will be served in the Decatur County Jail." *Id.* The plea agreement continued:

> The defendant has been advised that the Court has discretion to determine the sanction if the defendant has been found to have violated the rules and guidelines of Community Corrections. The defendant hereby waives this right and agrees that if found to have violated these rules or otherwise become ineligible (except for non-payment of fees due to a change in economic

---

[7] The *Woods* Court determined that, although the trial court erred by not allowing Woods the opportunity to explain why his violation was deserving of further consideration, Woods was not entitled to relief because at trial he did not make an offer of proof, nor did Woods "make any attempt" on direct appeal or on transfer "to explain why he violated the terms of his probation." 892 N.E.2d at 642. Accordingly, the trial court's judgment, revoking probation, was affirmed. *Id.*

circumstances) then the remaining portion of the defendant's executed sentence shall be served at the Decatur County Jail.

*Id.* The State filed a petition to revoke Sullivan's community corrections placement, alleging that he failed to report to home detention as required. At the revocation hearing, Sullivan testified that he did not report to home detention as required, but explained that he was an inpatient at a mental health facility and that he contacted his then-legal counsel and thought that counsel had contacted community corrections. Ultimately, the trial court ordered that "[a]s required by the Plea Agreement[,]" Sullivan's community corrections sentence was revoked, and he was ordered to serve his sentence at the DOC. *Id.* at 1160.

[20] On appeal, Sullivan did not dispute that he did not report as required. Rather, he argued that the trial court abused its discretion in imposing such a harsh sentence under the circumstances including among other factors that he was in a mental health hospital on the day he was to report. *Id.* at 1161. Discussing the *Woods* decision, the *Sullivan* court determined that the provision of Sullivan's plea agreement which provided that any non-fee violation would automatically result in the revocation of his community corrections placement was "constitutionally suspect." 56 N.E.3d at 1162 (citing *Woods*, 892 N.E.2d at 641). The *Sullivan* court noted the trial court's "belief that it was required to revoke Sullivan's placement by the terms of the plea agreement." *Id.* The *Sullivan* court concluded that "[b]ased on the totality of the circumstances, including the nature of the violation and sanction," the trial court abused its

discretion in finding that Sullivan's violation warranted revoking his community corrections placement and in ordering him to serve eighteen months in the DOC, and it remanded the matter for Sullivan to be placed in community corrections. *Id.*

[21] Here, unlike in *Woods*, Hampton was given the opportunity to introduce evidence as to why the trial court should not, even in the face of her violation(s), revoke her probation. Hampton's testified that she called the drug screen line as required most, but not all, days, although some days she missed the 3:00 p.m. deadline and instead called the front desk of the probation office, which the prosecutor suggested was a means that some probationers use to avoid having to be called in to take a drug screen. Hampton explained that she sometimes missed the deadline because she forgot and other times because she was at work until 4:00 p.m. With regard to payment of fees, she acknowledged that she was behind, but testified that she tried to make a catch-up payment and believed that she was close to being current. Hampton's counsel argued that she had "substantially complied" with the Agreement. *Tr.* at 18. The State responded that substantial compliance was not sufficient, as "it's a strict liability agreement." *Id.*

[22] On appeal, the State urges that the Agreement – in which (1) Hampton agreed to a violation, (2) the parties agreed to the sanction, and (3) the State agreed to stay her execution of the 550-day sentence on the condition that Hampton complete and abide by probation terms – is similar to a plea agreement, where the decision to accept or reject a plea agreement is a matter left to a trial court's

discretion, and once the trial court accepted the Agreement, a contract, its terms were binding upon the parties and the trial court. *See Abernathy v. State*, 852 N.E.2d 1016, 1019 (Ind. Ct. App. 2006) (trial court is given discretion to accept or reject plea agreement and, if it accepts plea agreement, trial court is strictly bound thereby and is precluded from imposing any sentence other than that required by plea agreement). However, in *Woods*, our Supreme Court rejected the analogy between a probation agreement that requires strict compliance and a plea agreement: "We reject this comparison. A defendant who enters a plea agreement knowingly, intelligently, and voluntarily is hardly similarly situated to a defendant who is advised in essence either agree to strict compliance or go to jail now for violating probation." *Woods*, 892 N.E.2d at 640 n.2.

[23] Following our Supreme Court's direction in *Woods* and our colleagues' application of that reasoning in *Sullivan*, we reverse the 550-day sanction and remand the matter to the trial court for it to determine the appropriate sanction to impose for Hampton's violations of its order.[8]

---

[8] We recognize that Hampton also asserts claims that (1) the Agreement illegally shifted the burden of proof to her, (2) she was denied due process at the review hearing because "did not receive proper notice of the claimed violations of the Agreement or disclosure of the State's evidence against her[,] and (3) her trial counsel was ineffective by allowing her to enter into the Agreement due to "constitutionally suspect" language in it. *Appellant's Br.* at 13, 16-17. Because we grant relief to Hampton on another basis, we do not reach these arguments.

We affirm the trial court's determination that Hampton violated the terms and conditions of her probation,[9] and we remand the matter to the trial court for it to determine the appropriate sanction to impose for Hampton's violations.[10]

Affirmed in part, reversed in part, and remanded.

Robb, J., and Barnes, J., concur.

---

[9] Hampton does not contend on appeal that she did not violate probation.

[10] We note that our Supreme Court in *Heaton* indicated that violations such as (1) failure to keep the probation department informed of current address, (2) failure to obtain a substance abuse evaluation, and (3) failure to verify employment with the probation department, are "technical in nature[.]" 984 N.E.2d at 618. "[T]he selection of an appropriate sanction will depend upon the severity of the defendant's probation violation[,]" and that "mere technicality" of some violations may warrant "a less severe sanction," but that "such determination is better exercised by the trial court." *Id*.