

**FILED**

Oct 31 2016, 9:33 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Laura Paul
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Justin S. Johnson, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | October 31, 2016 <br><br> Court of Appeals Case No. 28A05-1602-CR-309 <br><br> Appeal from the Greene Superior Court <br><br> The Honorable Dena Martin, Judge <br><br> Trial Court Cause No. 28D01-1409-F3-2 |

**Brown, Judge.**

[1] Justin S. Johnson appeals the trial court's order revoking his community corrections placement and ordering him to serve the remainder of his executed

sentence in prison. Johnson raises one issue which we revise and restate as whether the trial court abused its discretion in revoking his placement in community corrections. We reverse and remand.

### Facts and Procedural History

[2] On December 1, 2014, Johnson and the State executed a plea agreement which provided that Johnson would plead guilty to neglect of a dependent resulting in serious bodily injury as a level 3 felony and that sentencing would be left to the discretion of the trial court.

[3] On January 9, 2015, the court held a guilty plea and sentencing hearing. The court accepted the plea agreement and Johnson's guilty plea and, at Johnson's request, admitted the reports of two health care professionals which were completed in 2010 under another cause in connection with a previous charge against Johnson for forgery. One of the reports noted that Johnson confirmed that he wrote another person's name on a check for $1,000,000 and attempted to cash the check to obtain money to work on his house. The report stated in part that Johnson "was adequately oriented but appears to have marked learning, cognitive, and memory deficits," that Johnson "reported that he has been admitted for psychiatric hospitalizations on at least 3-4 occasions due to manic like symptoms," he has been diagnosed with borderline intellectual functioning, he "is likely to meet criteria for Mild Mental Retardation if he were formally tested," "he has a history of lifelong learning difficulties," and that he "has had consistent problems with obtaining and maintaining employment, housing and managing financial needs." Defendant's Exhibit B. The report

also stated that "[p]erhaps a good capture of [Johnson's] limited comprehension of his forgery is in his statement regarding his thinking at the time he attempted to cash the check, 'I sort of knew it was wrong but didn't really think people would mind.'" *Id.*

[4]  The court also noted that it had received a presentence investigation report ("PSI") and an Alternative Sentencing Evaluation. The Alternative Sentencing Evaluation filed by a case manager with Greene County Community Corrections stated that, because Johnson had previously been on probation, the case manager had contacted Johnson's probation officer "to see how capable [Johnson] was at understanding and following rules," and the probation officer "reported that [Johnson] successfully completed his probation with no problems." Appellant's Appendix, Volume II (Confidential), at 112. The PSI indicated that Johnson was charged in July 2010 with forgery as a class C felony and theft as a class D felony, that the forgery count was dismissed, that in February 2011 the court ordered Johnson to serve two years on probation and found that he was eligible for a reduction to a misdemeanor upon the successful completion of probation, and that in February 2013 his conviction was modified to theft as a class A misdemeanor. The recitation of Johnson's criminal history in the PSI shows that he had not previously been ordered to serve time in the Department of Correction ("DOC"). According to the PSI, he had been living in a trailer on his father's property for about one month at the time of his arrest, had Medicaid prior to his incarceration, has been on social security disability since he was seven years old, had been employed at Steak N'

Shake for about eleven months in 2011 and 2012, his overall risk assessment score places him in the low risk to reoffend category, and his debt was approximately $6,000 for medical, cable, and contract phone bills. The PSI also stated that a mitigating factor was that imprisonment would result in undue hardship to the person or the dependents of the person.

[5] Following argument by Johnson's counsel, the trial court stated "[y]es it is a mitigating circumstance your challenges, mental challenges that you are facing," that "the probation officer wanted the Court to find that the imprisonment of the person would result in undue hardship to the person, which I believe that, as your attorney indicated I believe placing you in the [DOC] is not going to be beneficial to you," and that "however you have to understand sir even with your limited ability that there are rules that you have to follow, rules not only to protect society from financial losses that is what we were talking about last time when you wrote the million dollar check." Transcript at 18-19. The court also stated "your little baby got hurt this time," "I can't take the chance that is going to happen," and "the fact that this was your child that you had the care and custody of, the fact that we had contact before not too long ago with the million dollar check that you wrote, you were put on probation, yes you did wonderful, but you are back, you have to understand that you have to follow the rules . . . ." *Id.* at 19.

[6] The court sentenced Johnson to eleven years with seven years executed, which was to be served on home detention through community corrections, and four years suspended to probation. The court ordered that Johnson have no contact

with the victim as a condition of probation. The home detention rules and conditions, which contained thirty-five numbered paragraphs, stated in part that home detention is defined as "the interior living area of the temporary or permanent residence of an offender," or "if the offender's residence is a multi-family dwelling, the unit in which the offender resides, and not the a) halls or common areas outside the unit where the offender resides; or b) other units occupied or unoccupied in the multi-family dwelling." State's Exhibit 1.

[7] On December 14, 2015, Greene County Community Corrections filed a Notice alleging that, as of that day, Johnson was behind in fees in the amount of $668. The Notice alleged that, on or about October 7, 2015, Johnson was given permission to travel to Bloomington to visit the social security office and that instead he went to the Shalom Center; that on or about November 10, 2015, a field officer noticed Johnson outside his apartment on the porch; that on or about December 1, 2015, Johnson went to a bank at 5:17 a.m. and later that day refused to pay fees owed for GPS monitoring and paid $260 of $465 for the month of December; that on or about December 12, 2015, Johnson had leave and returns documented by his equipment and the monitoring company reported the GPS beacon was moved that day; and that on or about December 13, 2015, the beacon was moved and there were several leaves and returns.

[8] On January 11, 2016, the court held a modification hearing at which the State presented evidence that Johnson lived in a high-rise, multi-family dwelling, and the testimony of a case manager that, while Johnson received a verbal authorization to be outside of his dwelling on October 7, 2015, the instruction

was to report to the social security office in Bloomington and that he instead went to the Shalom Center in Bloomington, and when later confronted by the case manager he denied having gone anywhere but the social security office. The case manager testified that on December 1, 2015, Johnson left his home at about 5:17 a.m. and traveled to a bank without permission and, on cross-examination, that there was a previously-arranged plan for Johnson to travel to the bank at 8:00 a.m. The case manager further testified that the GPS monitoring equipment reported that it was moved for short periods of time within Johnson's building on December 12 and 13, 2015, and that Johnson denied moving the beacon. The case manager stated that "the unusual portion" of the circumstance on December 12, 2015, was that Johnson "did not live [sic] his inclusion zone, but it did indicate that he was moving about within the building with the beacon which is also against policy."[1] Transcript at 47. The case manager indicated that on December 13th information was received that Johnson's "beacon was moving and that he was outside of his or potentially outside of his dwelling but still within his inclusion zone, he having spoken with him about that denied having left his home or the inclusion zone, but the monitoring company did indicate that they noted that he was outside of his inclusion zone either above or below the unit that he was occupying." *Id.* The case manager stated that Johnson was originally sentenced to home detention

---

[1] The case manager testified that Johnson lived in a multi-level, multi-family dwelling, that the monitoring company defined "a sphere" so "he can move up and down as well as laterally within that sphere," and that Johnson is not to be outside his apartment, "[b]ut because of the way the monitoring company's equipment functions there is a sphere called an inclusion zone that he is to remain within." Transcript at 35.

but had agreed to move to the work release center until he qualified for support through the Bloomfield Housing Authority and that he "seemed to function quite well at the work release center while he was there." *Id.* at 48.

[9] A community corrections field officer testified that, on approximately November 10th, he traveled to the high-rise where Johnson lived, pulled into the parking lot, observed Johnson sitting at a bench located outside underneath the canopy and just adjacent to the front door with another man, informed Johnson he was not to be outside, and walked him back to his apartment. The officer also testified that he met with Johnson several times over a period of a few months, that he recognized that Johnson had problems understanding things, and that he took his time to explain to Johnson that he could not be outside of the four walls of his apartment unless he was scheduled to leave. When asked if Johnson indicated whether he understood he was not supposed to be at the bench, the officer testified that Johnson indicated that he just wanted to go downstairs. At Johnson's request, the court admitted into evidence the two reports prepared by the health care professionals in 2010. The State recommended that Johnson be transferred to the DOC for the remainder of his sentence, and Johnson's counsel requested the court to place him at the work release facility and argued he has the funds to participate in the program.

[10] The court asked whether Johnson, after returning from the bank, paid for his home detention, and the case manager answered that Johnson had the money in his pocket to pay for the month and chose not to do so. When asked "[s]o was [Johnson] having the funds to remain on the program was that an issue,"

the case manager testified "it is or it was an issue yes." *Id.* at 64. Johnson's counsel asked the case manager if he was reluctant to pay all of the fees because he also needed to pay his rent, and the case manager stated that he "did indicate that was part of his issue that day" but that there was a discussion about his monetary obligations when he moved to home detention and he "felt comfortable with his monetary obligation that he had established with us and the high-rise." *Id.* at 65. The case manager testified that Johnson receives $720 per month, that his rent was $240 per month, and that as a GPS client he was charged fifteen dollars per day. When asked "[d]idn't leave a lot for food did it," the case manager testified "he represented that he was able to receive assistance from area churches and that he was willing to request assistance from local food banks in addition to applying for food stamps to be able to supplement his circumstances, we discussed all of these things on a number of occasions . . . ." *Id.* at 66. The case manager also indicated that, if Johnson were to be placed into the work release facility, he would be charged $110 per week.

[11] The trial court stated that it was going to show that Johnson's sentence would be modified to seven years executed in the DOC and that he would receive credit for time served in home detention, work release, and the Greene County Jail, which was 640 days total with good time credit.

## Discussion

[12] The issue is whether the trial court abused its discretion in revoking Johnson's placement in community corrections and ordering him to serve the remainder

of his executed sentence in the DOC. For purposes of appellate review, we treat a hearing on a petition to revoke a placement in a community corrections program the same as we do a hearing on a petition to revoke probation. *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999). Both probation and community corrections programs serve as alternatives to commitment to the DOC and both are made at the sole discretion of the trial court. *Id.* Placement on probation or in a community corrections program is a matter of grace and not a right. *Id.*; *see State v. Vanderkolk*, 32 N.E.3d 775, 777 (Ind. 2015) ("The similarities between the two programs have led to common treatment in appellate review of a trial court's decision to revoke either . . . ."). Our standard of review of an appeal from the revocation of a community corrections placement mirrors that for revocation of probation. *Cox*, 706 N.E.2d at 551. The State need only prove the alleged violations by a preponderance of the evidence, we will consider all the evidence most favorable to supporting the judgment of the trial court without reweighing that evidence or judging the credibility of witnesses, and if there is substantial evidence of probative value to support the court's conclusion that a defendant has violated any terms of probation, we will affirm its decision to revoke probation. *Id.*

[13]     Probation revocation is a two-step process. *Woods v. State*, 892 N.E.2d 637, 640 (Ind. 2008); *Treece v. State*, 10 N.E.3d 52, 56 (Ind. Ct. App. 2014) (setting forth the two-step process in addressing the revocation of placement in community corrections), *trans. denied*. First, the court must make a factual determination that a violation of a condition of probation actually occurred. *Woods*, 892

N.E.2d at 640. If a violation is proven, then the trial court must determine if the violation warrants revocation of the probation. *Id*. "However, even a probationer who admits the allegations against him must still be given an opportunity to offer mitigating evidence suggesting that the violation does not warrant revocation." *Id.* In addition, "failure to pay a probation user fee where the probationer has no ability to pay certainly cannot result in a probation revocation." *Id.* at 641.

[14] "We review a trial court's sentencing decision in a probation revocation proceeding for an abuse of discretion." *Puckett v. State*, 956 N.E.2d 1182, 1186 (Ind. Ct. App. 2011) (citing *Abernathy v. State*, 852 N.E.2d 1016, 1020 (Ind. Ct. App. 2006)). An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before the court. *Id.* A defendant cannot collaterally attack the propriety of an original sentence in the context of a probation revocation proceeding. *Id.* However, a defendant is entitled to challenge the sentence a trial court decides to impose after revoking probation. *Id.* (citing *Abernathy*, 852 N.E.2d at 1020 (citing *Stephens v. State*, 818 N.E.2d 936, 939 (Ind. 2004) ("A defendant is entitled to dispute on appeal the terms of a sentence ordered to be served in a probation revocation proceeding that differ from those terms originally imposed."))). A trial court's discretion in determining an appropriate sentence for a probation violation is not boundless. *See id.* at 1188.

[15] Johnson argues that the nature of his violations were minor, that he did not commit any new offenses or violate the no contact order, and that, "[w]hen he

was out of place, he was either very close to his small apartment, but still within his apartment building, leaving at the wrong time but going to the right place, or near where he was supposed to go." Appellant's Brief at 11. He further argues that the court had alternatives to sending him to the DOC and that it is undisputed that he had been successful in the work release program, had no disciplinary problems, and was able to pay his bills while on work release. He also argues that his community corrections fees were fifteen dollars per day or $450 in a thirty-day month, his rent was $240 per month leaving only thirty dollars per month for food, he would have been on the program for ten months at the time the notice to the court was filed which meant that he fell behind on average of only sixty-seven dollars per month, and that, given his financial constraints of $720 in social security disability benefits, his failure to keep current with his community corrections fees was due to an inability, not a refusal, to pay and that the shortage was not so egregious as to warrant placement in the DOC even with the other violations. Johnson also argues his financial burden would have been eased in work release given that he would not have to pay rent and the court imposed the most extreme sanction and bypassed other, likely more effective sanctions.

[16] The State responds that Johnson violated the condition that he was to remain in the interior living area of the apartment unit in which he resided on at least five occasions, he was $668 in arrears at the time of the notice to the court, and that he had indicated to a case manager that he had the money to pay his monthly fee but chose not to pay. The State further asserts that the violations were not

an isolated event but occurred over several weeks and that Johnson simply refused to abide by the rules placed upon him.

[17] Johnson does not argue that he did not violate the term of his placement that he not leave his apartment. Rather, he challenges the sentence or sanction of serving the entire remaining portion of his executed sentence in prison. According to the PSI, he previously received a sentence for theft as a class D felony of two years suspended to probation with eligibility for reduction to a misdemeanor upon successful completion of probation, and that two years later his conviction was modified to a class A misdemeanor. His probation officer indicated that he successfully completed his probation with no problems, and the trial court noted that Johnson "did wonderful" on probation and that it believed that placing him in the DOC would not be beneficial for him. Transcript at 19. At the modification hearing, the case manager testified that Johnson originally moved to the work release center until he qualified for support through the Bloomfield Housing Authority and that he "seemed to function quite well at the work release center while he was there." *Id.* at 48. The record demonstrates Johnson's successful placement on work release in the past.

[18] With respect to the nature of the violations, we note that the first violation involved Johnson visiting the Shalom Center in Bloomington although he had been given authorization to visit the social security office in Bloomington, the second violation involved Johnson sitting on a bench adjacent to the front door

of his apartment building speaking with another man, that Johnson was given permission to travel to a bank at 8:00 a.m. on December 1, 2015, but left home to travel to the bank at 5:17 a.m., and that the other two violations involved Johnson moving the GPS monitoring equipment for short periods within the apartment building. We agree with Johnson that, when he was "out of place, he was either very close to his small apartment, but still within his apartment building, leaving at the wrong time but going to the right place, or near where he was supposed to go." Appellant's Brief at 11. We also believe that well-documented mental limitations or illness as presented in this case, and which are clearly shown in the record, are relevant and deserve careful consideration as a mitigator by any reviewing trial judge.

[19] As for Johnson's resources and fees, the record shows that he receives social security benefits of $720 per month, paid $240 in rent per month, was required to pay home detention fees of fifteen dollars per day, and was required to pay for his food and personal items with the remaining funds. The case manager stated that Johnson had represented he was able to receive assistance from area churches. The Notice indicated that, after Johnson returned from the bank on December 1, 2015, he paid $260 of his fees of $465 for the month of December, and the case manager agreed that Johnson was reluctant to pay all of the fees because he also needed to pay his rent. To the extent the court's decision to revoke Johnson's placement was based in part on his failure to make full payment of his fees of fifteen dollars per day, the record does not establish that Johnson had the ability to make full payment of the fees. Also, the case

manager indicated that, if Johnson were placed into the work release facility, he would be charged $110 per week. Johnson has had prior success in a work release facility, he could more easily afford the work release placement fees if he did not have a rent payment, and placement in a work release facility is less severe than placement in the DOC, particularly given Johnson's level of intellectual functioning.

[20] The evidence supports the trial court's determination that Johnson violated the term of his community corrections placement that he not leave his apartment and its decision to revoke the placement. However, under the circumstances reflected in the record, including the level of Johnson's functioning and his resources, his previous successful placement on work release, the nature of the violation, and the severity of the court's sentence, we conclude that the trial court abused its discretion in finding that Johnson's violation warranted serving the entirety of the remaining portion of his executed sentence in the DOC. *See Puckett*, 956 N.E.2d at 1188 (noting that the offender admitted to violating the terms of his probation and that the trial court's discussion did not reveal anything particularly egregious about the offender's violation of failing to register as a sex offender and concluding that the trial court abused its discretion in ordering the offender to serve the entirety of his previously-suspended sentence); *see also Sullivan v. State*, 56 N.E.3d 1157, 1162 (Ind. Ct. App. 2016) (noting the offender did not dispute that he did not report as required by his community corrections placement and concluding in part, based on the nature of the violation and the sanction, that the trial court abused its

discretion in ordering the offender to serve the entire remaining portion of his executed sentence in prison) (citing *Ripps v. State*, 968 N.E.2d 323, 325-326 (Ind. Ct. App. 2012) (noting the offender admitted to violating the terms of his probation and concluding in part that the trial court abused its discretion in ordering the offender to serve the remainder of his suspended sentence in prison in light of the offender's medical condition and the technical nature of the violation)). Accordingly, we remand to the trial court with instructions to enter an order that Johnson be placed on work release for the remaining portion of his executed sentence.[2]

## *Conclusion*

[21] For the foregoing reasons, we reverse and remand for an order that Johnson be placed on work release for the remaining portion of his executed sentence.

[22] Reversed and remanded.

Robb, J., and Mathias, J., concur.

---

[2] We note that Johnson has been incarcerated in the DOC since January 11, 2016. In addition to the credit previously awarded as noted in the court's January 2016 abstract of judgment, Johnson is entitled to credit for time served, and any applicable good time credit, attributable to his incarceration in the DOC after the court's January 11, 2016 modification.