## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 12 2017, 8:07 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ruth Johnson
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kevin Pettiford,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 12, 2017

Court of Appeals Case No.
49A02-1612-CR-2678

Appeal from the Marion Superior Court

The Honorable Jeffrey Marchal, Magistrate

Trial Court Cause No.
49G06-1512-F4-42934

**Robb, Judge.**

# Case Summary and Issue

[1] Kevin Pettiford appeals the trial court's revocation of his placement in community corrections and order that he serve the balance of his six-year sentence in the Indiana Department of Correction ("DOC"). Concluding the trial court did not abuse its discretion in doing so, we affirm.

# Facts and Procedural History

[2] On February 24, 2016, Pettiford pleaded guilty to two counts of burglary, both Level 4 felonies, and was sentenced to six years for each count, to be served concurrently in a community corrections program. Pettiford was placed on work release. Following a notice of violation and hearing in March, Pettiford was found in violation of the terms of his placement but was continued on community corrections with his placement modified to home detention. Following a second notice of violation and hearing in April, Pettiford was again found in violation of the terms of his placement but continued on home detention "with strict compliance." Appellant's Appendix, Vol. II at 114.

[3] On October 25, 2016, Marion County Community Corrections filed another notice of violation alleging Pettiford failed to charge his electronic monitoring device, resulting in the device shutting down on October 24 at 4:40 p.m., leaving him unmonitored and his whereabouts unknown. The notice further alleged he failed to comply with his monetary obligation to community corrections. The notice was amended on October 27 to indicate Pettiford's

electronic monitoring device resumed monitoring on October 25 at 1:12 a.m., but he had nonetheless failed to maintain contact with community corrections in the interim.

[4] The trial court held a contested violation hearing on November 17, 2016. A representative of Marion County Community Corrections testified the electronic monitoring device gives several warnings—in the form of a visual alarm, vibration, and/or phone calls from the monitoring center—over the course of several hours before it shuts down due to lack of charge. She testified the monitoring center attempted on several occasions to contact Pettiford after his device shut down on October 24 using the phone number they had on record for him, but he never answered. Pettiford testified he did get the visual and tactile warnings the device needed to be charged. He plugged the device in as soon as he got home from work and it appeared to be charging while he was at home all night watching Monday Night Football. He did not receive any phone calls from the monitoring center. He testified he bought a new phone a week or so before and left a message for his case manager giving him the new number. Pettiford testified that at his regularly-scheduled meeting with his case manager on October 25,

> I just asked him, I asked him if he had received the voice mail of the new number, and he looked on his computer and he said, the 914 number, and I said yes, that's correct. He repeated the number, so I wanted to make sure and confirm that he had in fact received that number, and he confirmed that he did receive that voice mail and he had that number in his system.

Transcript, Volume II at 25-26.  When he met with maintenance thereafter, they issued a new charger for his device.  Pettiford's case manager testified that he only became aware of Pettiford's new number on October 25, and he updated his phone number that day.  The case manager had no recollection or record of Pettiford leaving a voice mail prior to that day.

[5]     The trial court found Pettiford in violation of his community corrections placement:

> This is largely one of credibility, and unfortunately, Mr. Pettiford doesn't have much credibility with this Court as this is not the first time he's been in front of me on a violation.  It's not the second time he's been in front of me on a violation. It's the third time he's been in front of me on a violation.  And he was placed back on strict compliance.  The more credible evidence is that Mr. Pettiford did not bother to tell [his case manager] about the new number until after he met with him on the 25th and he had seven hours for which he was unaccounted for, and he made no effort to let Community Corrections know where he was and that constitutes failure to maintain contact.
>
> So, I'm finding the State has met its burden as to allegations one [failing to charge his device] and three [failing to maintain contact].  It has not met its burden as to allegation two [failing to comply with monetary obligations].

*Id.* at 29.  As for the sanction, the trial court stated:

> [A]fter [Pettiford] was violated the first time, his placement was modified from Work Release to Home Detention which is something we rarely see.  And yet after that, he's been given more than one additional opportunity to get through this and he

can't. I also note that he was sentenced just in February. And so here we are less than a year into a six-year sentence which he agreed upon, and he's violated three times. I really have no options here. I'm going to revoke his placement on Community Corrections. He's going to serve the balance of his sentence in the Department of Correction.

*Id.* at 33. Pettiford now appeals.

# Discussion and Decision

## I. Standard of Review

[6] The issue raised by Pettiford is whether the trial court abused its discretion in revoking his placement in community corrections and ordering him to serve the remainder of his sentence in the DOC. For purposes of our review, the revocation of a community corrections placement is treated the same as the revocation of probation. *Johnson v. State*, 62 N.E.3d 1224, 1229 (Ind. Ct. App. 2016).

[7] Revocation is a two-step process: first, the trial court must make a factual determination that a violation of a condition of placement occurred, and if a violation is proven, the trial court must then determine if the violation warrants revocation. *Id.* The trial court's revocation decision is within its sound discretion. *Ripps v. State*, 968 N.E.2d 323, 326 (Ind. Ct. App. 2012). The State must prove the alleged violations by a preponderance of the evidence, and on appeal, we consider all the evidence supporting the trial court's judgment without reweighing that evidence or judging the credibility of the witnesses.

*Johnson*, 62 N.E.3d at 1229. One violation of a condition of placement is enough to support revocation. *Pierce v. State*, 44 N.E.3d 752, 755 (Ind. Ct. App. 2015). If there is substantial evidence of probative value supporting the trial court's conclusion that a defendant has violated any terms of his placement, we will affirm its decision to revoke the placement. *Johnson*, 62 N.E.3d at 1229.

[8]     As for the sanction upon revoking placement, we review a trial court's sentencing decision for an abuse of discretion. *Id.* A trial court abuses its discretion when its decision is against the logic and effect of the facts and circumstances before it. *Id.* at 1230.

## II. Revocation of Placement

[9]     Pettiford contends that under the totality of the circumstances, the trial court abused its discretion in determining that his violations warranted revoking his placement, citing *Ripps*, 968 N.E.2d 323.

[10]    In *Ripps*, the defendant pleaded guilty to child molesting and a portion of his sentence was suspended to probation. One of the conditions of his probation was that he not live within 1,000 feet of a youth program center. Some years into his probation, the defendant, now suffering from terminal cancer, congestive heart failure, and pulmonary disease, moved into an assisted-living facility and registered his address with the sheriff's department. His probation was revoked upon the trial court finding his residence was within 1,000 feet of a youth program center and he was ordered to serve the nearly three years remaining of his sentence in prison. On appeal, we considered the "totality of

the circumstances" presented by the case: the defendant's age and medical condition; his attempt to adhere to the terms of his probation by reporting his new address; the technical nature and ambiguity of the measurement placing him in violation of the residency restriction; that he was in the process of moving out of the improper residence when he was arrested; and his having wrongly served time in prison for a prior revocation based on an offense that was later vacated as a violation of ex post facto principles. *Id.* at 328. Under these circumstances, we held it "was unreasonable for the trial court to determine [the] violation warranted revoking [the defendant's] probation." *Id.*

[11]     Pettiford does not claim he did not violate the terms of his placement. Instead, he claims the circumstances of his violation do not warrant revocation because he provided his case manager with his new phone number when he got it, plugged his device into the charger when prompted and believed it to be charging while he was home as required on the night in question, and reported to his case manager as scheduled the morning after he was unmonitored for several hours. Thus, he contends he, like the defendant in *Ripps*, "took steps to adhere" to the conditions of his placement. Brief of Appellant at 8. He also notes he had a job and was voluntarily attending counseling. We do not believe the circumstances of this case rise to the level of the circumstances in *Ripps* that made revocation unreasonable. Even if, as Pettiford claims, he was unable to charge his device due to an equipment malfunction, he took no steps to notify anyone of the malfunction during the seven hours it was not operating, and he offered no explanation for why the device suddenly began charging in the

middle of the night. He claims he gave his case manager his new phone number at least a week prior to this incident, but the case manager had no recollection and no record of that. The trial court specifically rejected Pettiford's version of events, and as that was a credibility call, we are bound to give the trial court's determination on that matter credence. *See Johnson*, 62 N.E.3d at 1229. Moreover, in the eight months between Pettiford's placement in community corrections and this incident, Pettiford had already violated the terms of his placement twice. Accordingly, we conclude the trial court did not abuse its discretion in revoking Pettiford's community corrections placement and ordering that he serve the remainder of his sentence in the DOC.

# Conclusion

[12] The trial court did not abuse its discretion in revoking Pettiford's placement in community corrections and remanding him to the DOC to serve the remainder of his sentence. The trial court's judgment is affirmed.

[13] Affirmed.

Vaidik, C.J., and Bailey, J., concur.