## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 17 2018, 10:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Laura Sorge Fattouch
Sorge Law Firm, LLC
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Andrew A. Kobe
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ricky A. McQueen,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 17, 2018

Court of Appeals Case No.
18A-CR-121

Appeal from the
Decatur Circuit Court

The Honorable
Matthew D. Bailey, Special Judge

Trial Court Cause No.
16C01-1009-FA-192

**Kirsch, Judge.**

[1] Ricky A. McQueen ("McQueen") appeals the revocation of his probation, contending that the trial court abused its discretion when, after McQueen

admitted to having committed a new criminal offense, it sentenced him to serve 1,080 days of his previously-suspended sentence in the Indiana Department of Correction ("the DOC"). We affirm.

## Facts and Procedural History

[2] In September 2010, the State charged McQueen with three counts of dealing in a controlled substance, two of which were Class A felonies and one of which was a Class C felony. The parties entered into a conditional plea agreement, under which McQueen agreed to plead guilty to two Class B felonies and one Class C felony. The trial court accepted the plea agreement and, on December 15, 2011, sentenced McQueen to fifteen years for each of the Class B felonies and eight years for the Class C felony to be served concurrently, with eight years executed in the DOC and seven years suspended to supervised probation.

[3] McQueen violated his probation on three separate occasions. In September 2014, the State filed its first verified petition to revoke McQueen's probation. That matter was resolved in August 2015, when McQueen admitted to the violation, and the trial court revoked two years of the previously-suspended seven years of probation. McQueen was ordered to serve those two years in the DOC and, thereafter, complete the remaining five years on probation. *Appellant's App. Vol. 2* at 10-11.

[4] On November 1, 2016, after McQueen was arrested for Level 6 felony operating a vehicle while having a conviction for the same offense within the previous five years, the State filed a second verified petition for revocation of

McQueen's probation. *Id*. at 15-16. That second petition was still pending when, on September 21, 2017, the State filed a third verified petition to revoke McQueen's probation, alleging that McQueen had committed Class A misdemeanor domestic battery. *Id*. at 27. On December 19, 2017, the parties entered into a conditional guilty plea agreement, under which McQueen admitted both to having violated the conditions of probation and to having committed Level 6 felony operating a vehicle while intoxicated. As part of the plea agreement, the State agreed to cap the sentence for the probation violation at 1,080 days and dismiss Cause Number 16D01-1710-CM-1044.[1] *Id.* at 33.

[5] A fact-finding hearing was held on January 2, 2018, during which the State remarked that the sentence agreed to by the parties under the plea agreement was "on the lenient side." *Tr. Vol. 2* at 18. Leniency aside, the State urged the trial court to accept the plea agreement because it "resolve[d] the issues." *Id*. The trial court accepted the plea agreement and proceeded to sentencing. During sentencing, McQueen testified that he had been employed since the previous summer and that he and his fiancée had recently bought a home together. *Id.* at 5-6. He also said that he had a shoulder injury that needed medical care. *Id*. at 7-8. McQueen asked that he "be placed on home detention." *Id.* at 8. McQueen's mother and aunt testified that McQueen was a good person, who needed another chance. *Id*. at 12-16. McQueen admitted

---

[1] Although the plea agreement did not specify the nature of the crime, from the context of the plea agreement, it appears that the trial court dismissed the domestic battery count.

that he had been convicted of eight felonies and had violated probation in the past. *Id.* at 9-11.

[6]     The trial court found as a mitigating factor that McQueen pleaded guilty to having violated probation. However, the trial court gave less weight to the guilty plea because: (1) McQueen's plea was entered more than one year after the crime was committed; and (2) McQueen received valuable consideration for the guilty plea,[2] thus making it a "pragmatic decision" to enter into the plea. *Id*. at 21. The trial court found no evidence that the DOC was unable to treat McQueen's shoulder injury and was unconvinced that working was a mitigating factor. *Id*. at 21-22. The trial court cited McQueen's "extensive criminal history" as a "serious aggravating circumstance." *Id*. Specifically, the trial court cited to the fact that he was convicted of dealing drugs and was on probation at the time he operated a vehicle while intoxicated. *Id*. Following the hearing and in compliance with the plea agreement, the trial court ordered that 1,080 days of McQueen's remaining suspended-five-year sentence be executed in the DOC;[3] the rest of his probation was terminated as "unsuccessful." *Appellant's App*. *Vol. 2* at 13. McQueen now appeals.

---

[2] McQueen's original sentence included seven years suspended to probation. *Tr. Vol. 2* at 21. Two years of probation were revoked as a sanction for McQueen's first probation violation, which left five years, or 1,825 days, of probation. McQueen's deal with the State regarding sentencing for the instant probation violation "reduced his potential exposure from 1,825 days to 1,080 days." *Appellant's App*. Vol. 2 at 33.

[3] The trial court sentenced McQueen for the probation violation and separately for the Level 6 felony operating a vehicle while intoxicated and ordered those sentences to run consecutively. *Appellant's App. Vol. 2* at 13. McQueen is appealing only the sentence imposed for the probation violation.

# Discussion and Decision

[7]     McQueen argues that the trial court abused its discretion when it ordered him to serve 1,080 days of his previously-suspended sentence. "'Probation is a criminal sanction wherein a convicted defendant specifically agrees to accept conditions upon his behavior in lieu of imprisonment.'" *Hart v. State*, 889 N.E.2d 1266, 1271 (Ind. Ct. App. 2008) (quoting *Abernathy v. State*, 852 N.E.2d 1016, 1020 (Ind. Ct. App. 2006)). "These restrictions are designed to ensure that the probation serves as a period of genuine rehabilitation and that the public is not harmed by a probationer living within the community." *Jones v. State*, 838 N.E.2d 1146, 1148 (Ind. Ct. App. 2005).

> The trial court determines the conditions of probation and may revoke probation if the conditions are violated. Once a trial court has exercised its grace by ordering probation rather than incarceration, the judge should have considerable leeway in deciding how to proceed. If this discretion were not afforded to trial courts and sentences were scrutinized too severely on appeal, trial judges might be less inclined to order probation to future defendants.

*Hutchison v. State*, 82 N.E.3d 305, 310 (Ind. Ct. App. 2017) (quoting *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007) (internal citations omitted)). "Accordingly, a trial court's sentencing decisions for probation violations are reviewable using the abuse of discretion standard." *Id.* "An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances." *Id.*

[8] Probation revocation is a two-step process. *Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013). "First, the trial court must make a factual determination that a violation of a condition of probation actually occurred." *Id*. (citing *Woods v. State*, 892 N.E.2d 637, 640 (Ind. 2008)). That step is not at issue here because McQueen admitted that he committed a probation violation. "Second, if a violation is found, then the trial court must determine the appropriate sanctions for the violation." *Id*. (citing *Woods*, 892 N.E.2d at 640). Upon finding that a probationer has violated a condition of probation, a court may: (1) continue the defendant on probation; (2) extend the probationary period for not more than one year beyond the original period; or (3) order all or part of a previously-suspended sentence to be executed. Ind. Code § 35-38-2-3(g).

[9] McQueen argues that he admitted his probation violation and was remorseful; therefore, "[h]ad the trial court properly considered the circumstances, it would not have revoked so much of [his] suspended sentence." *Appellant's Br*. at 6. As outlined, this is not McQueen's first probation violation. In 2015, he admitted to a probation violation, and the trial court sentenced him to serve an executed two years of his previously-suspended seven-year sentence. The terms of McQueen's probation included that he "not commit any criminal act or violate any traffic law." *Appellant's App. Vol. 2* at 19. On November 1, 2016, the State filed a second petition to revoke McQueen's probation, alleging that he committed Level 6 felony operating a motor vehicle while intoxicated. *Id.* at 15-16. On September 21, 2017, while the second petition was still pending, the State filed a third petition to revoke McQueen's probation, alleging that he

committed the criminal offense of Class A misdemeanor domestic battery *Id*. at 27. In the same plea agreement, McQueen pleaded guilty to the Level 6 felony and admitted to violating the terms of his probation. At that time, McQueen still had five years, or about 1,825 days, left of his suspended probation. Under these facts, the trial court did not abuse its discretion by accepting the plea agreement, revoking McQueen's probation, and ordering him to serve 1,080 days in the DOC.[4]

[10] Affirmed.

Vaidik, C.J., and Riley, J., concur.

---

[4] We reject McQueen's reliance on *Johnson v. State*, 62 N.E.3d 1224 (Ind. Ct. App. 2016), as support for his argument that the trial court abused its discretion when it ordered him to serve some of his suspended sentence. In *Johnson*, the defendant received a seven-year executed sentence on home detention through community corrections and a four-year suspended sentence to probation. *Id*. at 1227. Based on the defendant's failure to fully pay fees and failure to follow instructions about where and when to be outside his apartment unit, the trial court revoked the defendant's entire executed sentence and ordered him to serve it in the DOC. Citing to the various factors in the record, including the defendant's mental limitations, limited resources, previous success on work release, nature of the violation, and severity of the revocation sentence, our court held that the trial court had abused its discretion by finding that the defendant's violation "warranted serving the entirety of the remaining portion of his executed sentence in the DOC." *Id*. at 1226, 1228, 1231. Here, unlike *Johnson*, the trial court did not order McQueen to serve the entirety of his suspended five-year-sentence in the DOC, and McQueen does not point to anything in the record to show that he has limited intellectual ability or that he had difficulty understanding that the terms of probation prohibited him from committing new crimes. The instant case is readily distinguishable from *Johnson*.