## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 28 2019, 10:26 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Matt Hansen,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

June 28, 2019

Court of Appeals Case No.
19A-CR-294

Appeal from the Ripley Circuit Court

The Honorable Ryan J. King, Judge

Trial Court Cause No.
69C01-1711-F5-56

**May, Judge.**

[1] Matt Hansen appeals the trial court's order revoking the remaining portion of his work release sentence, his GPS-home incarceration sentence, and six

months of his suspended sentence. Instead, Hansen would like to be reinstated to work release and in-home incarceration. Hansen argues the order is an abuse of discretion because the circumstances of his non-compliance were mostly out of his control. We affirm.

## Facts and Procedural History

[2] On March 19, 2018, Hansen pled guilty to Level 5 felony operating a vehicle as a habitual traffic violator suspended for life.[1] On April 5, 2018, the trial court sentenced Hansen to five years in the Indiana Department of Correction ("DOC") with three years suspended to probation. The court ordered Hansen's two years of executed time to be served as one year on work release followed by one year on GPS-home incarceration.

[3] The work release program allowed Hansen to go to work and to authorized doctor's appointments. Because his driver's license was suspended, Hansen relied on his mother and coworker to drive him to and from work and appointments. On September 25, 2018, two reporting officers discovered that Hansen visited unauthorized locations nineteen different times. Three of the locations were Hansen's coworker's house and the children's babysitters' locations because the coworker was the primary transport for his children. Another location was his mother's house to change his clothes in addition to his

---

[1] Ind. Code § 9-30-10-17 (2015).

mother needing to use the restroom because of irritable bowel syndrome. Another location was the library because he wanted to print some pictures so he could draw. Work release removed Hansen from its program for being in unauthorized locations and having an arrearage on fees.

[4] The State filed a petition for Hansen to be brought before the trial court for a hearing on his violation. The trial court held the hearing and then revoked Hansen's remaining work release sentence, his GPS-home incarceration sentence, and six months of his suspended sentence. The court ordered Hansen to serve two and a half years of probation when he is released from the DOC.

# Discussion and Decision

[5] Hansen asserts the trial court abused its discretion when it revoked his remaining work release sentence, his GPS-home incarceration sentence, and six months of his three-year suspended sentence. "We treat a hearing on a petition to revoke a placement in a community corrections program the same as we do a hearing on a petition to revoke probation." *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999). Probation is a favor granted by the State, not a right to which a criminal defendant is entitled. *Sanders v. State*, 825 N.E.2d 952, 955 (Ind. Ct. App. 2005), *trans. denied*. A court may order execution of all or part of the sentence that was suspended at the time of the initial sentencing if the court finds the person has violated a condition at any time before termination of that probationary period. Ind. Code § 35-38-2-3(h).

[6]     The conditions for probation and whether to revoke probation when those conditions are violated are left to the discretion of the trial court. *Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013). We review probation violation determinations and sanctions for an abuse of discretion. *Id.* An abuse of discretion occurs if the decision is "'clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.'" *K.S. v. State*, 849 N.E.2d 538, 544 (Ind. 2006) (quoting *In re L.J.M.*, 473 N.E.2d 637, 640 (Ind. Ct. App. 1985)). "We will second-guess the fact-finding court only when it responds to that factual context in an unreasonable manner." *Tapia v. State*, 753 N.E.2d 581, 585 (Ind. 2001).

[7]     Hansen admits he did not comply with the work release program rules, (Appellant's Br. at 11), but he argues his violations do not warrant revocation by the trial court. He relies on two cases in support of his argument: *Ripps v. State*, 968 N.E.2d 323 (Ind. Ct. App. 2012), and *Johnson v. State*, 62 N.E.3d 1224 (Ind. Ct. App. 2016). We disagree with Hansen's assertion that his circumstances are similar to those found in either *Ripps* or *Johnson*.

[8]     In *Ripps*, we held the trial court abused its discretion by revoking Ripps' probation and ordering him to serve the remainder of his suspended sentence in prison because Ripps took steps to comply with his probation rules. 968 N.E.2d at 324. Ripps moved into an assisted-living facility that was 980 feet from the public library, which violated a condition of his probation. *Id.* at 325. Ripps was in the process of moving out of the facility when he was arrested for

his violation. *Id.* at 327. We held that the revocation of Ripps' probation was an abuse of the trial court's discretion because the circumstances—appellant's medical condition, his attempt to adhere to the terms of his probation, the technical nature of the measurement of the distance between the assisted-living facility and the library, the fact that he was in the process of moving out when he was arrested, his having wrongly served time in prison for an offense that violated *ex post facto* principles, and the sheriff's department having learned of his living arrangement only because appellant reported his location—did not warrant revocation. *Id.* at 328.

[9] In *Johnson*, where the appellant had a cognitive deficit, we held the trial court abused its discretion in revoking Johnson's placement in community corrections. 62 N.E.3d at 1226. Johnson was to remain in the interior living area of the apartment in which he resided and keep current with his community corrections fees. *Id.* at 1230. Sometimes, he was near—not inside—his apartment, and he was unable to pay his fees. *Id.* We concluded the trial court abused its discretion in finding appellant's violation warranted serving the entirety of the remaining portion of his executed sentence in the DOC. *Id.* at 1232. We reasoned that the level of appellant's functioning and resources, his previous successful placement on work release, the nature of the violation, and the severity of the court's sentence were enough to justify placing Johnson on work release for the remaining portion of his executed sentence. *Id.*

[10] Here, Hansen continuously violated the work release rules, unlike Ripps, who moved out of his living space as soon as he was made aware the location

violated his probation. Hansen knew that he "should have called each and every time for each and every delay," (Tr. Vol. II at 13-14), but he did not do so. We disagree with his assertion that "his violations largely flow from circumstances beyond his control." (Appellant's Br. at 11.) The case would be different if each violation came as a surprise to Hansen, but that is not the situation. Hansen knew of his mother's irritable bowel syndrome and his coworker being the primary person to transport the coworker's children to and from their babysitter. Instead of notifying his work release reporting officer of the routine stops made by his drivers, Hansen violated the rules nineteen different times. Hansen knew how to pre-approve his doctor's appointments, so it would have been logical and practical to have the stops pre-approved as conditions that might occur during his drive to and from work and appointments. Unlike Ripps, Hansen did not take steps to address his on-going violations.

[11] Moreover, there is no evidence pointing to Hansen having cognitive deficits, which distinguishes him from Johnson, who had problems understanding. *Johnson*, 62 N.E.3d at 1228. Moreover, there were times when Hansen's drivers were not the reason for the unauthorized stops. One was because Hansen "didn't feel comfortable going to the doctor with everything exposed," (Tr. Vol. II at 10), because there was "a rather large hole down the backside of [his] pants," (*id.*), so he went home to change his pants. A second was because he was soaked head to toe with hydraulic fluid, so he went home to change his clothes. Just as it was logical to change clothes, it would have been equally

logical to notify the reporting officer that he was stopping by his house to do just that. A third stop was because Hansen wanted to print some pictures, which he acknowledged was not appropriate. (*Id*. at 12).

[12]     We cannot say the trial court abused its discretion when Hansen admits violating the rules and his only mitigating evidence is his willingness "to do the work to get right." (*Id*. at 14). Yet, when he was granted the opportunity to be on work release after breaking the law, Hansen violated the rules nineteen times. We are not convinced Hansen should be reinstated to work release and in-home incarceration when he knowingly and repeatedly broke the work release rules. *See*, *e.g., Milliner v. State*, 890 N.E.2d 789, 793 (Ind. Ct. App. 2008) (stating the trial court's decision was not clearly against the logic and effect of the facts and circumstances because "[appellant's] actions showed a lack of respect for the law and for the opportunities afforded him").

## Conclusion

[13]     The trial court did not abuse its discretion when it revoked the remaining portion of Hansen's work release sentence, his GPS-home incarceration sentence, and six months of his suspended sentence. Accordingly, we affirm.

Affirmed.

Mathias, J., and Brown, J., concur.