## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 30 2020, 10:17 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald R. Shuler
Barkes, Kolbus, Rife & Shuler, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Catherine Brizzi
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael J. Bedtelyon, *Appellant-Defendant,* | September 30, 2020 |
| | Court of Appeals Case No. 20A-CR-794 |
| v. | Appeal from the Elkhart Superior Court |
| State of Indiana, *Appellee-Plaintiff* | The Honorable Teresa L. Cataldo, Judge |
| | Trial Court Cause No. 20D03-1802-F4-16 |

**Crone, Judge.**

## Case Summary

Michael J. Bedtelyon appeals the trial court's revocation of his community corrections placement and probation. He asserts that the evidence is insufficient to support the finding of a violation and that the trial court abused its discretion in ordering that his remaining executed sentence be served in the Indiana Department of Correction (DOC) and in executing one year of his probation. We affirm.

## Facts and Procedural History

The facts most favorable to the judgment are as follows. On June 28, 2017, Elkhart police officers discovered Bedtelyon, then age twenty-five, in a public park with fourteen-year-old A.S., whom he had met through a smartphone dating application. A.S. told the officers that the two had engaged in sexual intercourse in the park. She underwent a forensic examination, and test results confirmed the presence of DNA consistent with Bedtelyon's. Bedtelyon initially denied having intercourse with A.S. but eventually admitted that the two had engaged in sexual intercourse on three different occasions.

The State charged Bedtelyon with three counts of level 4 felony sexual misconduct with a minor and six class A misdemeanor counts, including two each for contributing to the delinquency of a minor, public indecency, and criminal trespass. Bedtelyon was apprehended in Georgia and eventually pled guilty by plea agreement to one count of level 4 felony sexual misconduct with a minor and one count of class A misdemeanor criminal trespass. Per the plea

agreement, his sentencing was open to the trial court's discretion with the following limitations: sentences were to be concurrent, and any executed portion would be served in alternative placement. The trial court sentenced him to eight years, with three years executed in community corrections, with electronic monitoring, and five years suspended to probation. Bedtelyon initialed and signed the list of probation terms, many of which were conditions specifically applicable to sex offenders. These conditions also applied during his time in community corrections. *See* Appellant's App. Vol. 2 at 66 (judgment of conviction, stating in part, "During defendant's time on alternative placement, the sex offender terms of probation apply."). The conditions included prohibitions against accessing or using websites, chat rooms, or instant messaging programs frequented by children and against using a third party to access social media to communicate with a child. Bedtelyon was ordered to give probation technology representatives access to his computer and electronic devices for unannounced examinations and was prohibited from accessing the Internet or any other online service through any electronic device at any location without prior approval of his probation officer. Another condition required Bedtelyon to submit to polygraph examinations. *Id*. at 75, 77.

[4] In January 2020, Elkhart community corrections issued a notice of violation based on a finding that Bedtelyon had failed a polygraph examination. The polygraph administrator analyzed Bedtelyon's physiological responses during the polygraph and found that Bedtelyon had a "significant reaction" when answering in the negative to two questions: "Since your last polygraph have

you had physical sexual contact with anyone?"; and "Since your last polygraph have you communicated with a minor through the Internet?" *Id*. at 102. Bedtelyon disclosed to the examiner that he had engaged in phone sex with his girlfriend, who is from South Africa and was living either there or in Italy at the time. *Id*. at 95. He also admitted that he had communicated with her on "Facebook Messenger" through his sister-in-law, that he did it to save on long-distance charges, that the sister-in-law let her minor child say hello to him, and that he had not disclosed this arrangement to his case manager or obtained permission before using a third party to access social media. *Id*. at 95-96. For all these reasons, the community corrections director petitioned the trial court to revoke Bedtelyon's community corrections placement. The probation department also filed a notice of violation against Bedtelyon, claiming that he used prohibited websites, chat rooms, or instant messaging programs frequented by children.

[5] During a community corrections disciplinary hearing, Bedtelyon admitted to violating the sex offender terms of his placement. Tr. Vol. 2 at 20, 23. The trial court conducted a violation hearing and found that Bedtelyon had violated the conditions of his community corrections placement by circumventing the sex offender rules prohibiting him from accessing social media, whether directly or through an intermediary, without prior approval. The court revoked his placement and ordered that he serve the remaining executed portion of his sentence in the DOC. The trial court also revoked his probation, but executed

one year and re-suspended the four remaining years to probation. Bedtelyon now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

## Section 1 – The evidence is sufficient to support the trial court's conclusion that Bedtelyon violated the terms of his community corrections placement.

[6] Bedtelyon asserts that the evidence is insufficient to support the trial court's determination that he violated the conditions of his placement. Placement in a community corrections program or on probation is a matter of grace and not of right. *Johnson v. State*, 62 N.E.3d 1224, 1229 (Ind. Ct. App. 2016). For purposes of our review, we treat a hearing on a petition to revoke a community corrections placement the same as we do a hearing on a petition to revoke probation. *Id.* In conducting our review, we consider the evidence and reasonable inferences most favorable to the judgment without reweighing that evidence or reassessing witness credibility; if substantial evidence of probative value supports the court's conclusion that a defendant has violated any terms of probation, we will affirm its decision to revoke the defendant's placement/probation. *Id.*

[7] Revocation of a community corrections placement or probation is a two-step process, wherein the trial court first makes a factual determination as to whether the defendant violated the terms of his placement or probation. *Treece v. State*, 10 N.E.3d 52, 56 (Ind. Ct. App. 2014), *trans. denied*; *Woods v. State*, 892 N.E.2d 637, 640 (Ind. 2008). Because such a proceeding is civil in nature, the

State need only prove the alleged violation by a preponderance of the evidence. *Holmes v. State*, 923 N.E.2d 479, 485 (Ind. Ct. App. 2010). If a violation is found, the court then determines whether the violation warrants revocation. *Woods*, 892 N.E.2d at 640. Proof of a single violation is sufficient to permit a revocation. *Beeler v. State*, 959 N.E.2d 828, 830 (Ind. Ct. App. 2011), *trans. denied*. As with probationers, those who are placed in community corrections are subject to the conditions of that placement; if they violate those terms and conditions, the community corrections director may change the terms, continue the placement, reassign the person, or ask the trial court to revoke the person's placement. Ind. Code § 35-38-2.6-5(a).

[8] Bedtelyon admitted at his disciplinary hearing that he had violated the terms of his placement. Yet, he now contends that the State failed to meet its burden of demonstrating a violation during the violation hearing. He relies on the following language in the sex offender terms, which he initialed and signed: "8. You are prohibited from accessing or using certain web sites, chat rooms, or instant messaging programs frequented by children."; and "9. You shall not use a social networking web site or an instant messaging or chat room program to communicate, directly or through an intermediary, with a child less than sixteen (16) years of age." Appellant's App. Vol. 2 at 75. With respect to condition 8, he claims that the State failed to prove that he accessed an instant messaging program frequented by children. During the violation hearing, the trial court judicially noticed that Facebook is frequented by children. The court stated that it lacked familiarity specifically with Facebook Messenger, which is

part of the Facebook "realm," but articulated its incredulity concerning any claim by Bedtelyon that he was unaware of its usage by children. Tr. Vol. 2 at 44.

[9] Regardless, Bedtelyon is quick to point out that *he* was not accessing social media at all. Instead, he simply would call his sister-in-law in Hawaii and have her access her Facebook Messenger account to contact his girlfriend in South Africa or Italy so that he could save money on overseas long-distance calls. He claims that he did not violate condition 9 because his girlfriend was not underage and his only contact with a child came when his sister-in-law put her minor child on the line. He claims that he did not violate condition 8 because it does not specifically prohibit a sex offender/probationer from *using a third party intermediary* to access websites, chat rooms, or instant messaging programs frequented by children. In making these arguments, Bedtelyon ignores other conditions to which he was subject as a sex offender. For example, condition 27 requires him to give his probation officer and/or probation technology representative access to his home computer and devices for unannounced examinations. Appellant's App. Vol. 2 at 77. Most significantly, condition 26 reads, in part, "You shall not access the Internet or any other on-line service through use of any electronic device at any location … without prior approval of your [case manager or] probation officer." *Id.* These rules are in place to prevent defendants from avoiding detection on their own computers by using the devices and social media accounts of others.

Here, Bedtelyon did just that. He had been granted permission to contact his girlfriend by phone or letter but not through social media. Community corrections case manager Lyle Baimter testified that Bedtelyon had never been given permission to use an intermediary (his sister-in-law) to contact his girlfriend via her device and social media account. Tr. Vol. 2 at 16-17. Bedtelyon admitted as much to his polygraph examiner. Appellant's App. Vol. 2 at 96. He circumvented the sex offender rules by attempting to do indirectly that which he was prohibited from doing directly. *See Hively v. School City of Nappanee*, 202 Ind. 28, 169 N.E. 51, 53 (1929) (contract for leasing of schoolhouse held void as attempt to do indirectly what was legally prohibited if done directly). The evidence and reasonable inferences most favorable to the judgment are sufficient to support the trial court's conclusion that Bedtelyon violated the conditions of his placement.

## Section 2 – The trial court acted within its discretion in ordering that Bedtelyon serve the remainder of his executed sentence in the DOC and in executing a portion of Bedtelyon's probation.

Bedtelyon also challenges the trial court's choice of sanction for his probation/community corrections violation. The trial court's sentencing decisions for probation violations are reviewable for an abuse of discretion. *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or where the trial court misinterprets the law. *Jackson v. State*, 6 N.E.3d 1040, 1042 (Ind. Ct. App. 2014).

[12] The executed portion of Bedtelyon's sentence comprised placement in the local community corrections program. As stated, Indiana Code Section 35-38-2.6-5(a)(4) provides, "If a person who is placed under this chapter violates the terms of the placement, the community corrections director may …. [r]equest that the court revoke the placement and commit the person to the county jail or department of correction for the remainder of the person's sentence." As for probation, once a violation is established, the trial court may impose one or more of the following sanctions: (1) continue the defendant's probation, with or without modifying or enlarging the conditions; (2) extend the defendant's probationary period for not more than one year beyond the original probationary period; or (3) order execution of all or part of the sentence that was suspended at the time of initial sentencing. Ind. Code § 35-38-2-3(h). Here, the trial court actually ordered the execution of only one of the five years of Bedtelyon's probation.

[13] Bedtelyon claims that the trial court abused its discretion in imposing a sanction that is not commensurate with his violation, which he characterizes as technical and relatively minor. He relies on several cases in which the trial court was found to have abused its discretion in ordering an excessive sanction, considering the nature of the defendant's violation. *See, e.g.*, *Johnson v. State*, 62 N.E.3d at 1231-32 (court abused discretion where defendant was remanded to DOC for minor violations and defendant had mental limitations); *Sullivan v. State*, 56 N.E.3d 1157, 1162 (Ind. Ct. App. 2016) (court abused discretion in imposing maximum term for violation of community corrections placement

involving failure to report for home detention as ordered); *Ripps v. State*, 968 N.E.2d 323, 325-26 (Ind. Ct. App. 2012) (court abused discretion in imposing severe sanction given technical nature of violation and other circumstances such as defendant's poor health); *Puckett v. State*, 956 N.E.2d 1182, 1186 (Ind. Ct. App. 2011) (abuse of discretion where court considered improper factors).

[14] Here, Bedtelyon's violation was neither technical nor minor; rather, it went to the core of his felony conviction. He had sexual intercourse with a fourteen-year-old girl and, per his plea agreement, received alternative placement in community corrections. Many of the sex offender conditions of his placement comprised orders to stay away from children and from places where children might be expected to go, whether personally or online through a website, chat room, or instant messaging program. Bedtelyon was absolutely prohibited from accessing the sites and programs frequented by children; he was forbidden from using an intermediary to communicate with a child via social media; his computer was subject to immediate search; and he was forbidden from using a computer or device anywhere unless he had prior authorization to do so. Nevertheless, acting without permission, he used an intermediary to circumvent these conditions. He admitted that he violated the terms of his community corrections placement and that his use of an intermediary was not an isolated incident. Tr. Vol. 2 at 20; *see also* Appellant's App. Vol. 2 at 99 (defendant's statement that he continues to communicate with girlfriend through sister-in-law's Facebook Messenger). He attempted to downplay his conduct by rationalizing that he used his sister-in-law as an intermediary simply because it

was more cost effective. This does not justify his repeated circumvention of the terms aimed at keeping him away from children. The trial court found him to be a risk to "public safety because people who try and circumvent the rules are the people that are dangerous." Tr. Vol. 2 at 44.

[15] Finally, we remind Bedtelyon of the grace afforded him through the plea agreement's dismissal of three of the four level 4 felony counts against him and five of the six class A misdemeanor counts against him. His original placement outside the DOC was a demonstration of grace, and again, he has been afforded grace, as the trial court chose to re-suspend to probation four years of his remaining term. We find no abuse of discretion in the trial court's chosen sanction. Accordingly, we affirm.

[16] Affirmed.

Robb, J., and Brown, J., concur.